# EXHIBIT A

Andrew R. Wolf, Esq.
Henry Wolfe, Esq.
Galex Wolf, LLC
1520 U.S. Highway 130 - Suite 101
North Brunswick, NJ 08902
(732) 257-0550 - tel
(732) 257-5654 - fax

Christopher J. McGinn
The Law Office of Christopher J. McGinn
P.O. Box 365
79 Paterson St.
New Brunswick, NJ 08901
(732) 937-9400 - tel
(800) 931-2408 - fax
Attorneys for Shanee N. Pollitt and those similarly situated

FILED & RECEIVED #2
[illegible] JAN 20 A [illegible] 23
MIDDLESEX COUNTY

Shanee N. Pollitt, on behalf of herself and those similarly situated,

Plaintiff,

vs.

DRS Towing, LLC d/b/a Advanced Financial Services; Wachovia Dealer Services, Inc. d/b/a WDS, Inc., WFS Financial, and WFS Financial Inc.; and John Does 1 to 10,

Defendants.

SUPERIOR COURT OF NEW JERSEY
MIDDLESEX COUNTY - LAW DIVISION

Civil Action

Docket No.: MID-L- 473-10

**CLASS ACTION COMPLAINT AND JURY DEMAND**

## NATURE OF THE ACTION

1. Plaintiff brings this action on behalf of herself and those similarly situated against Defendant Wachovia Dealer Services, Inc. (Wachovia), a financial services company, and Defendant DRS Towing, LLC (DRS), a repossession towing company, for unlawfully exploiting the New Jersey consumers whose vehicles they repossess.

2. Defendant Wachovia repossessed Plaintiff's vehicle and failed to provide her with accurate information as to the amount necessary to redeem the vehicle as mandated by New Jersey law. In addition to misrepresenting the redemption amount, Wachovia

required Plaintiff to travel approximately 233 miles from her home in New Jersey to an auto auction in upstate New York and pay more than $1,000 in fees to redeem her vehicle and personal property.

3. Plaintiff brings claims against Wachovia on behalf of herself and those similarly situated under the Uniform Commercial Code N.J.S.A. 12A:1-101 *et seq.* (NJUCC), the Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq.* (CFA), and the Truth-in-Consumer Contract, Warranty, and Notice Act, N.J.S.A. 56:12-14 *et seq.* (TCCWNA), seeking monetary damages, injunctive remedies, and other relief.

4. Defendant DRS repossessed Plaintiff's vehicle, removed her personal possessions, and then refused to release the property unless she paid its unlawful reclamation fee. Holding personal property hostage to compel payment of an illegitimate fee is an unconscionable business practice and a misrepresentation under the New Jersey Consumer Fraud Act. Plaintiff brings claims against DRS on behalf of herself and those similarly situated under the CFA and TCCWNA seeking monetary damages, injunctive remedies, and for other relief.

## VENUE

5. Middlesex County is an appropriate venue as Defendant Wachovia is an out-of-state corporation that conducts business in Middlesex County, New Jersey.

## ALLEGATIONS OF FACT

6. Plaintiff Shanee N. Pollitt is a nursing student who resides in Lawnside, New Jersey.

7. Defendant Wachovia Dealer Services (Wachovia), doing business as WDS, Inc., WFS Financial, and WFS Financial Inc., is in the business of servicing motor vehicle loans. It is a subsidiary of Wachovia Bank, N.A.

8. DRS Towing LLC, doing business as Advanced Financial Services, is a towing and repossession company with a main business address of 957 Sicklerville Rd., Sicklerville, New Jersey.

9. Defendant John Does 1 to 10 are fictitious names of individuals and businesses alleged for the purpose of substituting names of Defendants whose identity may be disclosed in discovery and should be made parties to this action.

10. On or about March 24, 2006, Plaintiff entered a retail installment sales contract (RISC) to

finance the purchase of a 2002 Toyota Camry from Toyota of Runnemede that assigned the RISC to Defendant Wachovia. A copy of the RISC is attached as **Exhibit A.**

11. The RISC contains the following provisions concerning Plaintiff's rights if the vehicle would be repossessed: "In addition to any rights we may have under law, upon any default" the creditor's rights include the following provisions...

- "The right to require you to pay our actual necessary and reasonable costs of retaking and storing the Goods which are authorized by law."
- "We may take any other things founds (*sic*) in the Goods but will return these things to you if you ask... in a letter sent to us by certified mail within a reasonable time."

12. On or about September 10, 2009 Defendant DRS took possession of Plaintiff's Camry while the vehicle was parked near her residence.

13. Employees or agents of Defendant DRS took possession of the Camry acting on behalf of Defendant Wachovia.

14. Employees or agents of Defendant DRS took the Camry to its facilities in Sicklerville, New Jersey.

15. Employees or agents of Defendant DRS removed the personal possessions of Plaintiff from the Camry before the vehicle was then transported from Sicklerville, New Jersey to State Line Auto Auction located in Waverly, New York.

16. When Defendant DRS took the Camry, a number of Plaintiff's personal possessions were inside the vehicle, including her school textbooks.

17. When Plaintiff realized her vehicle had been repossessed, she contacted Defendant Wachovia to inquire as to how she could redeem the vehicle.

18. Defendant Wachovia sent Plaintiff a "Notice of Our Plan to Sell Property" (Notice), a copy of which is attached as **Exhibit B**. Plaintiff's account number has been redacted from the exhibit.

19. The Notice includes the following provision: "You can get the property back at any time before we sell it by paying us the full amount you owe (not just the past due payments), including our expenses. To learn the exact amount you must pay, call us at 1-888-937-9992."

20. Plaintiff called Wachovia as instructed to learn the exact amount she would have to pay to redeem her Camry.

21. An employee or agent of Defendant Wachovia informed Plaintiff that the amount necessary for her to redeem the Camry was $9,534.26. Defendant Wachovia did not mention that any other amount would have to be paid for her to redeem the Camry.

22. An employee or agent of Defendant Wachovia informed Plaintiff that she would have to make a payment of this amount to Defendant Wachovia before she could regain possession of the Camry.

23. Plaintiff obtained a bank check from Wachovia bank in the amount of $9,534.26 that she sent to Defendant Wachovia.

24. Approximately $350 of the $9,534.26 was to pay a repossession fee.

25. After receiving Plaintiff's check, Defendant Wachovia informed Plaintiff that it had transported the Camry to Stateline Auto Auction in Waverly, New York and that Plaintiff would need to make arrangements to retrieve the vehicle from that location.

26. Plaintiff requested that Defendant Wachovia make arrangements for the Camry to be transported to her residence or some other closer location.

27. Defendant Wachovia refused this request and told Plaintiff she would have to contact Stateline directly to make arrangements to retrieve the Camry.

28. Plaintiff contacted Stateline that informed her that it was holding the Camry and would only release it to her if she paid more than $600 in various fees. This was the first time that Plaintiff had heard that it would be necessary for her to pay an amount in addition to the $9,534.26 paid to Wachovia in order for her to redeem the Camry.

29. Stateline also informed her that it would only accept payment in the form of cash and that she could only reclaim the Camry at certain times of day.

30. Having no other feasible option to reclaim the Camry, Plaintiff travelled from her home in Lawnside, New Jersey, to the Stateline auction in Waverly, New York.

31. To make this trip, she left home around 6:30 a.m. and took a bus to a New Jersey transit station where she took a New Jersey transit train to Pennsylvania Station, in Manhattan, New York. From there, she walked to the Port Authority bus terminal where she took a bus to Waverly, New York. From there, she took a taxi to Stateline.

32. An employee or agent of Stateline told Plaintiff that she would have to pay $644 before it would release the Camry.

33. Plaintiff paid Stateline $644 in cash.

34. An employee or agent of Stateline provided Plaintiff with a receipt, a copy of which is attached as **Exhibit C**.

35. The Stateline receipt provides an itemization of the $644 as follows:

a. $369 for "Transportation from Sicklerville, NJ";

b. $120 for "Storage @ $10.00 per day";

c. $75 for "Admin. Fee";

d. $75 for "Keys"; and

e. an additional $5 charge.

36. Plaintiff asked an employee or agent of Stateline about her possessions inside the Camry at the time of repossession and was told that her property was in the possession of Defendant DRS in Sicklerville, New Jersey.

37. Plaintiff then took possession of the Camry and drove approximately 233 miles back to her home in Lawnside, New Jersey. She arrived home around 10:30 p.m. at night.

38. The return trip took approximately 16 hours.

39. Plaintiff then contacted Defendant DRS and inquired as to the process for the return of her personal property.

40. An employee or agent of Defendant DRS told Plaintiff that she would have to pay a cash fee of $60 before it would release her property to her.

41. Plaintiff travelled to the offices of DRS in Sicklerville, New Jersey.

42. An employee or agent demanded Plaintiff pay $60 in cash.

43. Plaintiff paid the fee and her personal property was returned to her.

44. DRS did not charge Plaintiff sales tax on the $60 fee.

45. DRS did not remit to the State of New Jersey any portion of the $60 fee collected from Plaintiff.

46. The New Jersey Sales and Use Tax Act imposes sales tax on storage charges for tangible personal property not held for sale.

47. When Plaintiff was at DRS she learned that the amount of the fee that it demands for the return of personal property is related to the identity of the financial institution that ordered the repossession.

48. Defendant DRS performed the repossession services on behalf of Defendant Wachovia subject to a contract.

49. The contract between Defendant Wachovia and Defendant DRS required that Defendant DRS perform certain services, including removing personal property from repossessed vehicles and storing such property.

50. Defendant Wachovia paid approximately $350 to Defendant DRS for services that included repossessing Plaintiff's vehicle, removing her personal property, and storing her personal property.

51. The $350 that Defendant Wachovia paid Defendant DRS was paid out of the $9,534.26 that Plaintiff paid Wachovia.

52. Plaintiff was not a party to any contract that required her to pay a fee to reclaim her personal property that was in her vehicle at the time it was repossessed.

53. The RISC does not contain a provision that required Plaintiff to pay a fee to reclaim her personal property that was in her vehicle at the time it was repossessed.

54. Defendant DRS only charges a fee to those Wachovia consumers who actually reclaim their personal property. It does not charge the fee to the other customers whose property it stored after removing the property from their vehicles nor does it attempt to collect that fee from Defendant Wachovia.

55. Defendant DRS acted as Defendant Wachovia's agent in the collection of the $60 fee from Plaintiff.

56. Defendant Wachovia and its agents required that Plaintiff pay $10,238.26 to redeem her vehicles and reclaim her personal property. Of that amount, $350 was a fee for the repossession, $644 was a fee for the services of Stateline, and $60 was a fee for Defendant DRS to release Plaintiff's personal property for a total of $1,054.

57. The $1,054 charged to Plaintiff for fees related to the repossession did not include any fee for the sale of the vehicle.

58. Plaintiff also had to pay approximately $107.55 to travel from her home to Waverly, New York and to drive the Camry home from that location.

59. There are numerous motor vehicle auctions much closer to Plaintiff's home than the Stateline auction in Waverly, New York.

60. Plaintiff has suffered damages as a result of Defendants' unlawful actions including but not limited to: the $644 fees that she was compelled to pay over and above the redemption amount; the $60 that she was compelled to pay Defendant DRS to reclaim her

personal property; and the approximately $107.55 paid by Plaintiff to travel from her home to Waverly, New York and to drive the Camry home from that location.

61. Defendant Wachovia misrepresented the amount necessary to redeem the repossessed vehicles of more than 50 New Jersey resident persons similarly situated to Plaintiff in a manner similar to the experience of Plaintiff.

62. Defendant Wachovia required more than 50 New Jersey resident persons similarly situated to Plaintiff to travel to Waverly, New York to as a condition of redeeming their collateral vehicles in a manner similar to the experience of Plaintiff.

63. Defendant Wachovia required more than 50 New Jersey resident persons similarly situated to Plaintiff to pay approximately $1,000 in fees as a condition of redeeming their collateral vehicles in a manner similar to the experience of Plaintiff.

64. Defendant Wachovia charged more than 50 New Jersey resident persons similarly situated to Plaintiff fees in excess of the reasonable expenses of retaking, holding, preparing for disposition, processing, and disposing, of the collateral in a manner similar to the experience of Plaintiff.

65. Defendant Wachovia and Defendant DRS required more than 50 New Jersey resident persons similarly situated to Plaintiff to pay a fee as a condition for the release of their personal property taken from their repossessed vehicles.

**Class Allegations**

66. This action is brought as a class action, pursuant to the provisions of Rule 4:32 of the New Jersey Court Rules.

67. Ms. Pollitt brings this action on behalf of herself and all others similarly situated. The proposed class is defined as follows:

**Definitions of Two Classes**

Plaintiff alleges claims brought on behalf of two Classes of persons similarly situated to herself:

**Class A:** All consumer obligors to whom Defendant Wachovia provided an inaccurate redemption amount at any time during the four years prior to the filing of the initial Complaint; and/or

**Class B:** All persons who were charged and paid a fee to Defendant DRS as a condition of DRS releasing property that had been in their vehicle when it was repossessed by Defendant DRS at the request of Defendant Wachovia.

Specifically excluded from the proposed Classes are:

a. The officers, directors, employees, and legal representatives of Defendants, as well as their immediate family members;

c. The officers, directors, employees, and legal representatives of any repossession company, motor vehicle auction company, or any other company directly involved in the repossession or disposition of collateral of any Class member; and

d. Any Judge or Magistrate presiding over this action and members of their immediate families.

68. The Classes for whose benefit this action is brought are so numerous that joinder of all members is impracticable. The precise size of the proposed classes and the identity of its members will be readily ascertainable from Defendants' business records.

69. There are questions of law and fact common to the members of the Classes that predominate over questions affecting only individuals.

70. These common questions include but are not limited to:

a. Whether Defendant Wachovia misrepresented the amount necessary for Plaintiff and those similarly situated necessary to redeem their collateral motor vehicles, and, if so, whether this practice violated the NJUCC, TCCWNA, and/or the CFA;

b. Whether Defendant Wachovia's practice of requiring its customers to travel to Waverly, New York and pay approximately $1,000 to redeem their repossessed motor vehicle and personal property violates the NJUCC and/or the CFA;

c. Whether Defendant Wachovia required Plaintiff and those similarly situated to pay fees to an automobile auction as a condition of it releasing their repossessed collateral motor vehicle after paying Wachovia the redemption amount and, if so, whether this practice violated the NJUCC, TCCWNA, and/or the CFA;

d. Whether Defendants practice of charging a fee as a condition of releasing the personal property taken from a repossessed vehicle is a violation of the NJUCC and/or the CFA; and

e. Whether the retail installment sales purchased by Defendant Wachovia violates TCCWNA.

71. Proof of a common set of facts will establish liability and the right of each Class member to recover.

72. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

73. While the economic damages suffered by the individual Class members are significant, the amount may be modest compared to the expense and burden of individual litigation.

74. A class action will cause an orderly and expeditious administration of the claims of the Classes and will foster economies of time, effort and expense.

75. The claims and defenses of Ms. Pollitt are typical of the claims and defenses of the members of the Classes, since all such claims and defenses arise out of common practices and standardized form documents.

76. The questions of law and/or fact common to the members of the Classes predominate over any questions affecting only individual Class members.

77. Ms. Pollitt does not have interests antagonistic to those of the Classes.

78. The Classes are ascertainable.

79. Ms. Pollitt will fairly and adequately protect the interests of the Classes, and has retained competent counsel experienced in the prosecution of consumer class actions.

80. The prosecution of separate actions by individual members of the Classes would run the risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for Defendants in this action. Prosecution as a class action will eliminate the possibility of repetitious litigation.

81. The prosecution of separate actions by individual members of the Classes would create the risk that adjudications with respect to individual members of the Classes would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

82. Wachovia has acted or refused to act on grounds generally applicable to Ms. Pollitt and all Class members, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Classes. A class action will cause an orderly and expeditious administration of the Classes and will foster economies of time, effort and expense.

83. Ms. Pollitt does not anticipate any difficulty in the management of this litigation.

**COUNT ONE**
**Violations of the NJUCC**

84. Ms. Pollitt repeats and realleges all prior allegations as if set forth at length herein.

85. Ms. Pollitt and those members of Class A are consumer obligors under N.J.S.A. 12A:9-102(a)(25).

86. The disposition of the vehicle of Ms. Pollitt and those members of Class A was not commercially reasonable in every aspect in violation of N.J.S.A. 12A:9-623.

87. Defendant Wachovia violated N.J.S.A. 12A:9-614 in its transactions with Ms. Pollitt and those members of Class A.

88. By misrepresenting the amount necessary to redeem the collateral vehicles repossessed by Wachovia from Ms. Pollitt and those members of Class A, Wachovia violated the NJUCC.

89. By requiring that Ms. Pollitt and members of Class A travel to Waverly, New York to as a condition of redeeming their collateral vehicles, Wachovia violated N.J.S.A. 2A:9-623.

90. By requiring that Ms. Pollitt and members of Class A pay approximately $1,000 in fees as a condition of redeeming their collateral vehicles, Wachovia violated N.J.S.A. 2A:9-623.

91. The fees charged to Ms. Pollitt and members of Class A were in excess of the reasonable expenses of retaking, holding, preparing for disposition, processing, and disposing, of the collateral. By requiring that Ms. Pollitt and members of Class A as a condition of redeeming collateral, Wachovia violated N.J.S.A. 2A:9-623.

92. Defendant Wachovia violated the NJUCC rights of Ms. Pollitt and members of Class A.

93. Defendant Wachovia breached its duty of "good faith" owed to Ms. Pollitt and members of Class A as required by the UCC.

94. Defendant Wachovia's failure to comply with N.J.S.A.12A:9-614 constituted a breach of its duty of "good faith" which includes both "honesty in fact" and "the observance of reasonable commercial standards of fair dealing" required by N.J.S.A. 12A:9-102(a)(43).

**COUNT TWO**
**Violations of the Consumer Fraud Act**

95. Ms. Pollitt repeats and realleges all prior allegations as if set forth at length herein.

96. Defendant Wachovia has engaged in unconscionable commercial practices, deception, fraud, false promises, false pretences and/or misrepresentations, as specified above, in its interactions with Ms. Pollitt and those members of Class A and/or Class B in violation of the New Jersey Consumer Fraud Act (N.J.S.A. 56:8-1 et. seq.).

97. Each of the above mentioned NJUCC violations of Defendant Wachovia constitute deceptive and unconscionable business practices in violation of the CFA.

98. By misrepresenting the amount necessary to redeem the collateral vehicles repossessed by Wachovia from Ms. Pollitt and those members of Class A, Wachovia committed an unconscionable business practice, a misrepresentation and a deceptive act in violation of the CFA.

99. By requiring that Ms. Pollitt and members of Class A travel to Waverly, New York to as a condition of redeeming their collateral vehicles, Wachovia committed an unconscionable business practice, a misrepresentation and a deceptive act in violation of the CFA.

100. By requiring that Ms. Pollitt and members of Class A pay approximately $1,000 in fees as a condition of redeeming their collateral vehicles, Wachovia committed an unconscionable business practice, a misrepresentation and a deceptive act in violation of the CFA.

101. The fees charged to Ms. Pollitt and members of Class A were in excess of the reasonable expenses of retaking, holding, preparing for disposition, processing, and disposing, of the collateral. By requiring that Ms. Pollitt and members of Class A as a condition of redeeming collateral, Wachovia committed an unconscionable business practice, a misrepresentation and a deceptive act in violation of the CFA.

102. Ms. Pollitt and those Members of Class B had an absolute and unconditional right to the return of personal property contained in their repossessed vehicles.

103. The personal possessions contained in the vehicles of Ms. Pollitt and those Members of Class B were not subject to any security interest.

104. The personal property contained in the vehicles of Ms. Pollitt and those Members of Class B could not be lawfully taken and held by Defendants pursuant to self-help repossession.

105. Defendants DRS and Wachovia were constructive bailees of the personal property

contained in the vehicles of Ms. Pollitt and those Members of Class B, and were therefore required to surrender such property.

106. There is no basis in the law for Defendants' charge of a fee as a condition for the release of the personal property of Ms. Pollitt and those Members of Class B.

107. There is no basis in the law for Defendants' assertion of any lien against the personal property of Ms. Pollitt and those Members of Class B.

108. Defendants violated the CFA by:

a. Charging Ms. Pollitt and those Members of Class B that they must pay a fee as a condition for the release of their personal property.

b. Imposing an unlawful lien against the personal property of Plaintiff and those similarly situated.

d. Conditioning the release of the personal property of Ms. Pollitt and those Members of Class B on payment of improper and unowed "storage", "handling" and/or "administration" fees.

109. Ms. Pollitt and those members of Class A and/or Class B were damaged and suffered an ascertainable loss as a result of the above violations of the CFA.

**COUNT THREE**
**Violations of the Truth-in-Consumer Contract, Warranty and Notice Act**

110. Ms. Pollitt repeats and realleges all prior allegations as if set forth at length herein.

111. The Truth-in-Consumer Contract, Warranty and Notice Act, N.J.S.A. 56:12-14 et seq. (hereinafter "TCCWNA") prohibits businesses from using contracts or notices in transactions with consumers that contain provisions that violate the consumers' rights or the business's responsibilities under New Jersey or federal law.

112. The Wachovia retail installment form contract used in the transaction with Plaintiff (Exhibit A) and with other putative class members were consumer contracts subject to TCCWNA.

113. The Wachovia retail installment form contract contains provisions that violate the purchaser's rights and Wachovia's responsibilities under New Jersey law.

114. The provision in the Wachovia retail installment form contract that permits Wachovia to keep unsecured personal property found in a repossessed vehicle and only return the property to the rightful owner "if you [the purchaser] ask in a letter sent to us by certified

mail within a reasonable time" violates Wachovia's responsibilities under N.J.S.A. 46:30C-3, which imposes an unconditional, affirmative duty on Wachovia to "make reasonable efforts to return the property to its owner" under such circumstances.

115. The provision in the Wachovia retail installment form contract that permits Wachovia to keep unsecured personal property found in a repossessed vehicle and only return the property to the rightful owner "if you [the purchaser] ask in a letter sent to us by certified mail within a reasonable time" violates the consumer's' right to title and possession of their unsecured personal property as established by New Jersey property law and the New Jersey constitution.

116. The provision in the Wachovia retail installment form contract that states that Wachovia would return unsecured personal property found in a repossessed vehicle "if you ask" is a false promise and misrepresentation in violation of the CFA at N.J.S.A. 56:8-2, because Wachovia's practice has not been to hold consumers' personal property and "return it to [them]" on request. Instead Wachovia has delegated the bailment of consumers' personal property to its various third-party repossession agents, and has required consumers to *retrieve* the property by personally traveling to the third-party agents impound yards and satisfying further conditions imposed by the repossession agent and/or Wachovia.

117. Therefore, Wachovia violated TCCWNA at N.J.S.A. 56:12-15 against Plaintiff and all other putative class members and is liable to them for statutory damages and other relief as set forth at N.J.S.A. 56:12-17.

WHEREFORE, Ms. Pollitt, on behalf of herself and those similarly situated, respectfully prays for relief as follows:

a. For an order certifying this matter as a class action providing notice to the members of the Classes, and appointing Ms. Pollitt as the class representative and her attorneys as Class Counsel;

b. For a declaratory judgment that Defendants violated the Consumer Fraud Act, N.J.S.A. 56:8-1 et seq., the Truth-in-Consumer Contract, Warranty and Notice Act, N.J.S.A. 56:12-14 et seq., and the New Jersey Uniform Commercial Code, N.J.S.A. 12A: 9-102 et seq.;

c. For injunctive relief prohibiting Defendants from carrying out future violations of the NJUCC, CFA, and TCCWNA similar to the violations alleged herein;

d. For an order of restitution in an amount to be determined at trial to restore to all affected obligors all money acquired by Defendants or its successors in interest by means of its unlawful, unfair and fraudulent practices and all interest and profit earned thereon;

g. For actual damages;

h. For compensatory damages;

i. For treble damages pursuant to N.J.S.A. 56:8-19;

j. For maximum statutory damages pursuant to the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 et. seq., the Truth-in-Consumer Contract, Warranty and Notice Act, N.J.S.A. 56:12-14 et. seq., the New Jersey Uniform Commercial Code, N.J.S.A. 12A:9 102 et seq., and all other applicable statutes;

k. For reasonable attorney's fees and costs of suit in connection with this action pursuant to N.J.S.A. 56:8-19, N.J.S.A. 56:12-17, and all other applicable statutes;

l. For nominal damages;

m. For consequential damages;

n. For pre-judgment and post-judgment interest; and

o. For such other and further relief as the Court deems equitable and just.

## JURY DEMAND

Ms. Pollitt demands a trial by jury on all issues subject to trial by jury.

## NOTICE TO ATTORNEY GENERAL OF ACTION

A copy of this complaint will be mailed to the Attorney General of the State of New Jersey within ten days after the filing with the Court, pursuant to N.J.S.A. 56:8-20.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to Rule 4:25-4, Andrew Wolf is designated as trial counsel for Ms. Pollitt in the above matter.

## CERTIFICATION

Pursuant to R. 4:5-1, I hereby certify to the best of my knowledge that the matter in controversy is not the subject of any other action pending in any court or the subject of a pending

arbitration proceeding, nor is any other action or arbitration proceeding contemplated. I further certify that I know of no party who should be joined in the action at this time.

Henry P. Wolfe
Attorney for Ms. Pollitt and those similarly situated

Dated: January 15, 2010

# EXHIBIT A

Appended to the:
Class Action Complaint and Jury Demand, Pollitt v. DRS Towing, LLC, et al.

FROM TD BANK NA 856 533 4795 (FRI) 10. 9'09 14:33/ST. 14:32/NO. 4870197717

RETAIL INSTALLMENT CONTRACT

Contract No.: 2584072 Date of Contract: 03/24/2006

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all scheduled payments. | Total Sale Price The cost of your purchase on credit, including your downpayment of $ 1500.00 |
|---|---|---|---|---|
| 14.99 % | $ 7350.78 | $ 15503.70 | $ 22854.48 | $ 24354.48 |

Your Payment Schedule will be: e means estimate

| No. of Payments | Amt. of Payments | When Payments Are Due |
|---|---|---|
| 66 | $ 346.28 | Monthly, beginning 04/23/2006 |
| | $ N/A | |

Security: You are giving a security interest in the goods or property being purchased.

Filing Fees $ N/A

Late Charge: If a payment is more than 10 days late, you will be charged $10.00.

Prepayment: If you pay off early, you will not have to pay a penalty.

See below and your other contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and security interests and prepayment refunds and penalties.

This Contract is between you and the Seller. All disclosures have been made by the Seller, who intends to assign (transfer) this Contract to the "Assignee" named below. If more than one person signs as Buyer below, each will be bound, separately and together, for the payment of all sums due and the performance of all your promises in this Contract. The terms in the above box are part of this Contract.

You are the Buyer(s), SHAWEE M POLLITT REDACTED

Name(s) Address Zip Code

We are TOYOTA OF RUNNEMEDE the Seller(s), 99 S. BLACKHORSE PIKE RUNNEMEDE NJ 08078

Name(s) Business Address Zip Code

Under this Contract, you agree to buy the following property, including its accessories, all of which is called the "Goods."

| YEAR | MAKE | BODY STYLE | SERIAL NUMBER | MODEL |
|---|---|---|---|---|
| 2002 | TOYOTA | 4 DOOR SED | 4T1BE32K12U506956 | CAM LE GOLD |

ACCESSORIES:

TRADE-IN: Your trade-in is described as follows:

Year and Make Description

PAYMENT SCHEDULE: You agree to pay us the Total Sale Price for the Goods. You will do this by making the Cash Downpayment and assigning the Trade-In, if shown above, on or before the Date of Contract, and paying us the Amount Financed, plus Finance Charges, in the number and amount of monthly payments as provided in this Contract. Payments must begin on the date indicated in the Payment Schedule and are due on the same day of each following month until we receive payment in full. You may pay all or part of the Amount Financed in advance without penalty or premium. Payments must be made at any office of:

WFS FINANCIAL INC. (the "Assignee")

Itemization of Amount Financed

| | |
|---|---|
| Cash Price | $ 15846.00 |
| Cash Downpayment | $ 1500.00 |
| Trade-In: Value of Trade-In | $ N/A |
| Lien Payoff to: N/A | $ N/A |
| Unpaid Cash Price Balance | $ 14346.00 |
| Amount Paid to Others on Your Behalf (To the extent permitted by applicable law, we may retain a portion of these amounts) | |
| To Credit Insurance Company | $ N/A |
| To Property Insurance Company | $ N/A |
| To Sales Tax | $ 950.70 |
| To Public Officials | $ 112.00 |
| To DOC FEE | $ 95.00 |
| To N/A | $ N/A |
| Amount Financed | $ 15503.70 |

PROPERTY INSURANCE: You will keep the Goods insured against fire, theft, collision and other risks. You can obtain such insurance from any insurer of your choice who is acceptable to us. However, if one of the boxes below is checked, you have decided to obtain this insurance from us.

[ ] Collision insurance for a term of N/A months. The cost of it is $ N/A. The limit of coverage is $ N/A less a deductible of $ N/A

[ ] Comprehensive insurance for a term of N/A months. The cost of it is $ N/A. The limit of coverage is $ N/A, and a deductible of $ N/A. [ ] Other (describe)

THIS DOES NOT INCLUDE INSURANCE ON YOUR LIABILITY FOR BODILY INJURY OR PROPERTY DAMAGE. WITHOUT SUCH INSURANCE, YOU MAY NOT OPERATE THIS VEHICLE ON PUBLIC HIGHWAYS. (See INSURANCE on the reverse side.)

CREDIT INSURANCE IS NOT REQUIRED: Credit insurance is available through us for the term of this Contract at the cost(s) shown below. Single Credit Life and Single Credit Accident and Health Insurance are available to any one Buyer signing for insurance below. No credit insurance will be provided unless the appropriate statement(s) is signed by the Buyer(s) to be insured and the cost(s) shown below are included in the Amount Financed. See the Certificate of Insurance or the Notice of Proposed Insurance given to you as a separate document.

By signing, you want Single Credit Life insurance, which costs $ N/A

Signature of Buyer to be insured for Single Credit Life Insurance

What is your age? ______ Years

By signing, you want Single Credit Accident & Health Insurance, which costs $ N/A

Signature of Buyer to be insured for Single Credit Accident & Health Insurance

What is your age? ______ Years

By signing, you both want Joint Credit Life insurance, which costs $ N/A What are your ages?

1. ______ Years

2. ______ Years

Signatures of both Buyers to be insured for Joint Credit Life Insurance

SECURITY AGREEMENT: To secure the payment of all sums owed to us and the performance of all your promises in this Contract, you grant us a lien and security interest in the Goods and in any parts called "accessions" which are attached to the Goods at any later time, and in all proceeds of the Goods.

IF THIS CONTRACT INVOLVES THE SALE OF A USED VEHICLE, THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.

USE: You will use the goods primarily for personal, family or household purposes. You will maintain the Goods in good condition and will protect them against loss, damage and destruction. You will principally keep the Goods at your address shown above or at the following address:

ADDITIONAL TERMS: THIS CONTRACT CONTINUES ON THE REVERSE SIDE. YOU ARE BOUND TO ALL THE TERMS OF THIS CONTRACT WHICH APPEAR ON THE FRONT AND REVERSE SIDES.

NOTICE TO RETAIL BUYER(S): DO NOT SIGN THIS CONTRACT IN BLANK. YOU ARE ENTITLED TO A COPY OF THIS CONTRACT AT THE TIME YOU SIGN. KEEP IT TO PROTECT YOUR LEGAL RIGHTS. BUYER(S) ACKNOWLEDGE(S) RECEIPT OF A COMPLETED COPY OF THIS CONTRACT AT THE TIME OF SIGNING.

TOYOTA OF RUNNEMEDE

Seller (Corporate or Firm Name)

X [signature] (SEAL)

Signature of Authorized Representative of Seller Controller

X [signature] (SEAL) 03/24/2006

Signature of Buyer Date

X (SEAL)

Signature of Buyer Date

CO-SIGNER: YOU SHOULD READ THE NOTICE TO CO-SIGNER, WHICH HAS BEEN GIVEN TO YOU ON A SEPARATE DOCUMENT, BEFORE SIGNING THE CO-SIGNER'S AGREEMENT.

*CO-SIGNER'S AGREEMENT:* You, the person (or persons) signing below as "Co-Signer," promise to pay to us, or to our order, the Amount Financed, plus Finance Charges and other charges, as provided in this Contract with the Buyer. You intend to be legally bound by all the terms of this Contract, separately and together, with the Buyer. You are making this promise to induce us to make this Contract with the Buyer, even though the proceeds will be used only for the Buyer's benefit. You agree that we may seek immediate payment from you without making any prior demand for payment on the Buyer. You also acknowledge receiving a completed copy of this Contract.

X (SEAL)

Co-Signer's Signature Address Date

X (SEAL)

Co-Signer's Signature Address Date

CO-OWNER'S SECURITY AGREEMENT: You, the person signing below as "Co-Owner," together with the Buyer or otherwise being all of the Owners of the Goods, give us a Security Interest in the Goods identified above. You agree to be bound by the terms of the Security Agreement and all other parts of this Contract except the promise to pay contained in the Payment Schedule section. You are giving us the security interest to induce us to make this contract with the Buyer, and to secure the payment by the Buyer of all sums due on this Contract. You will not be responsible for any balance which might be due after repossession, sale of the Goods and application of the sale proceeds to the debt.

(SEAL)

Co-Owner's Signature Address Date

NOTICE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION.

FROM TD BANK NA 856 533 4795 (FRI)10. 9'09 14:34/ST. 14:32/NO. 4870197717

ADDITIONAL TERMS

1. HOW WE FIGURE THE FINANCE CHARGE: The Finance Charge (or "Time Price Differential") consists only of interest at the Annual Percentage Rate shown on the front, which is imposed each day on the outstanding balance of the Amount Financed. The Finance Charge shown on the front was figured by assuming that all your payments were made as scheduled. If any payment is late, you must pay more Finance Charge than is shown because of the additional interest imposed. If you pay early, the Finance Charge will be less. The amount of the increase or decrease in interest will be due with your last payment, which will be modified as necessary to reflect the actual amount then due.

2. LATE CHARGE: If we do not receive any payment within 10 days of its due date, you agree to pay a Late Charge of $10.00. The Late Charge will be due as soon as it is charged. We will not charge you a Late Charge if the reason that the payment is late is because: (a) after default we demanded that you pay the entire outstanding balance; or (b) we collected a Late Charge for an earlier payment.

3. RETURNED CHECK CHARGE: If any check, draft or other item you send in payment of your obligation on this Contract is returned unpaid for insufficient funds, you agree to pay us a Returned Check Charge of $20.00.

4. YOUR PROMISES:

(i) OUR SECURITY INTEREST. You will not permit anyone other than us to obtain a security interest or other rights in the Goods. You will pay all filing fees necessary for us to obtain and maintain our security interest in the Goods. If a certificate of title is required on the Goods, you will have our security interest noted on the certificate of title. You agree to cooperate with us and to sign any and all documents, applications or certifications as we may reasonably request which we deem necessary to perfect and protect our security interest and/or to transfer it to an Assignee.

(ii) PRESERVING THE GOODS. You will keep the Goods in good condition and repair. You will pay taxes and charges on the Goods. You will pay all costs of maintaining the Goods. You will not abuse the Goods or permit anything to be done to the Goods which will lessen their value, other than for normal wear and use. You will not use the Goods for illegal purposes or for hire. You will not move the Goods to a new permanent place without our written consent. You will not sell the Goods or give them to any other person. You will permit us to inspect the Goods at all reasonable times.

(iii) INSURANCE. You will keep the Goods insured against fire, theft and other hazards customarily insured against for goods of that kind until all sums owed to us are paid in full, and will provide to us, on request, evidence that the required insurance is in force. The insurance coverage must be satisfactory to us and protect your interests and our interests at the time of any insured loss. The insurance must be written by an insurance company licensed to do business in the state where the Goods are permanently kept or garaged. The insurance policy must provide us with at least 10 days notice of any cancellation or reduction in coverage for any reason. You agree to promptly notify us of any loss or damage to the Goods and to promptly file a proof of loss with the insurance company. If you do not file a proof of loss, we may do so on your behalf. Insurance proceeds will be applied by us to repair or replace the Goods, but only if we believe this is economically feasible. Otherwise, they will be applied to reduce the unpaid balance due us.

5. RISK OF LOSS: Loss, damage or destruction of the Goods will not release you from your promises in this Contract.

6. FURTHER ADVANCES SECURED: If you fail to pay filing fees, taxes, or amounts necessary to keep the Goods in good condition and repair, we may, if we choose, advance the sums necessary to protect our interest. If you fail to keep in force the required insurance and/or fail to provide evidence of such insurance to us, we may notify you that you should purchase the required insurance at your expense. If you fail to purchase the insurance within the time stated in the notice and/or fail to provide evidence of such insurance to us, we may purchase coverage under a Lender's Collateral Protection Policy to protect our interest in the balance due under this Contract, to the extent permitted by applicable law, and charge you the cost of the premiums and any other amounts we incur in purchasing the insurance. THE INSURANCE WE PURCHASE MAY BE SIGNIFICANTLY MORE EXPENSIVE AND PROVIDE YOU LESS COVERAGE THAN INSURANCE YOU COULD PURCHASE YOURSELF. If permitted by applicable law, any sums we advance on your behalf may be added to the balance on which we impose interest as provided in this Contract. If we advance any amounts on your behalf, it will not cure your default. Such sums as we advance will be payable by you, as you show may direct, as follows:

(i) immediately on demand;

(ii) along with your monthly payment and your monthly payment will be increased accordingly;

(iii) at or before the end of the Contract term; or

(iv) as provided for in a separate note or other credit instrument.

7. YOUR TRADE-IN: You promise that you have full title and the power to sell any property that you have given us as a trade-in in connection with this Contract. You promise that there are no claims or security interests outstanding on that trade-in, other than the amount shown as "Lien Payoff" in the Trade-In section of the Itemization of Amount Financed on the front side of this Contract.

8. DEFAULT. The following are Defaults of this Contract:

(i) You fail to make any payment on or before the day it comes due;

(ii) You fail to perform any other of your promises in this Contract;

(iii) You provide us with false information or signatures at any time;

(iv) Any of you dies, is declared legally incompetent, or is convicted of a crime involving fraud or dishonesty;

(v) Any of you becomes insolvent or bankrupt;

(vi) You sell, transfer or deliver the Goods to another person without our consent; or

(vii) The Goods are lost, damaged or destroyed, or are levied or attached, or are subjected to a forfeiture or condemnation proceeding.

9. OUR RIGHTS ON DEFAULT: In addition to any rights we may have under law, upon any Default, our rights include:

(i) ACCELERATION. The right to declare all sums then owing on this Contract, including earned interest, to be due and payable immediately.

(ii) SURRENDER OF GOODS. The right to require you to deliver the Goods to us at a place which is reasonably convenient to you and to us.

(iii) REPOSSESSION OF GOODS. The right to obtain possession of the Goods, with or without process of law, if you do not deliver them to us. You authorize us to peaceably enter any premises where the Goods may be in order to take possession of the Goods and remove them. You authorize us to use your license plates in removing the Goods to a place of storage. We may take any other things found in the Goods, but will return those things to you if you ask. If you want these things back, you agree to ask us in a letter sent to us by certified mail within a reasonable time.

(iv) OUR COSTS. The right to require you to pay our actual, necessary and reasonable costs of retaking and storing the Goods which are authorized by law. If we begin an action to collect what you owe and refer this Contract to an attorney who is not our salaried employee, you will also pay our court costs and reasonable attorney's fee not to exceed 20% of the first $500.00 of the amount due and 10% of any excess remaining.

(v) SALE OF THE GOODS. The right, as provided by law, (a) to sell the Goods at a public or private sale, or (b) to propose to keep the Goods in full satisfaction of your obligations under this Contract. In the event of sale, we will give you at least 10 days reasonable notice of the time and, if a public sale, also of the place of sale. We will apply the sale proceeds first to our costs. The balance of the proceeds will then be applied to Late Charges, and then to the balance due us. If there is a surplus, we will pay it to you. If there is still an amount due us, you must immediately pay it to us, with interest which, if permitted by law, will continue to be imposed at the rate provided in this Contract until we are paid in full.

10. APPLICATION OF PAYMENTS: We will apply payments in the following order: interest, late charges, fees and then principal. You agree that we may change this order at any time without notice to you, if the change in order is not less favorable to you.

11. PREPAYMENT: You may prepay, in full or in part, the amount you owe on this Contract at any time without penalty. If you prepay the Contract in part, you agree to continue to make regularly scheduled payments until you pay all amounts due under this Contract. This will reduce the number of payments you will make. If you prepay in full, we will refund to you part of the credit insurance premium you paid based on a formula approved by law.

12. WAIVER: If we waive any right or Default, that waiver is not binding on us if we later choose to exercise that or any other right or a similar Default occurs. Our exercise of one or more rights will not cause us to lose our other rights. Without notice to you and without in any way affecting your obligations to us on the Contract, you agree that we may (i) add additional Buyers, (ii) extend the time for payment of any sums due on this Contract, or (iii) add or release any Goods securing repayment of this Contract. We and Assignee waive the right to treat any property as security for the repayment of this Contract except for the Goods and other Security specifically mentioned in this Contract.

13. RIGHT OF SET-OFF: The law gives us a right of set-off in any of your property in our possession. When we assign (transfer) our rights in this Contract, the Assignee will obtain the right of set-off. If you default, the Assignee may exercise the right of set-off and apply any of your property in the Assignee's possession, including deposit accounts, to sums you owe on this Contract.

14. ASSIGNMENT: You may not assign (transfer) your rights under the Contract but we may. Upon receiving notice of our sale of the Contract to the "Assignee," you agree that the Assignee shall have all of our rights and remedies as the owner of the Contract, and you agree to make all payments thereafter to the Assignee. Any Assignee may later sell the Contract to another Assignee who shall then be the owner of this Contract.

15. MISCELLANEOUS: If any part of this Contract is determined to be invalid, the rest shall remain in effect. The laws of New Jersey shall apply to this Contract, except as federal laws apply. This Contract shall benefit us and our successors and assigns, and shall bind you, your heirs and your personal representatives.

NOTICE—ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

NO WARRANTY: UNLESS WE PROVIDE TO YOU A SEPARATE WRITTEN WARRANTY, SUCH AS ON THE WINDOW FORM FOR THIS VEHICLE, OR UNLESS WE ENTER INTO A SERVICE CONTRACT WITH YOU WITHIN 90 DAYS FROM THE DATE OF THIS CONTRACT, WE MAKE NO WARRANTY TO YOU CONCERNING THE GOODS, OR THAT THEY ARE MERCHANTABLE OR FIT FOR ANY PARTICULAR PURPOSE. IF THE GOODS ARE NEW OR STILL UNDER THE MANUFACTURER'S WARRANTY, WE WILL PROVIDE YOU WITH THE MANUFACTURER'S WRITTEN MATERIALS, WHICH BIND ONLY THE MANUFACTURER.

ASSIGNMENT WFS FINANCIAL INC

To induce you, "Assignee" named on the front to purchase the within Contract, the Seller hereby warrants and represents, and continues to warrant and represent that the sale has been made in strict conformity with all applicable federal, state and local laws and regulations, including, but not limited to, Article 2 of the New Jersey Uniform Commercial Code (N.J.S.A. 12A:2-101 et seq.); our title to the Contract and the Goods (called "Vehicle" in this Assignment) covered thereby is absolute, free of all liens, encumbrances and security interests, and is subject only to the rights of the Buyer as set forth therein; the Contract is genuine, the signatures thereon are not forgeries, or us from the sale of the Vehicle therein described, and all parties thereto are of full age, had capacity to contract and are the persons they purport to be; the description of the Vehicle and extra equipment is complete and correct, the cash downpayment and/or trade-in allowance were actually received and no part thereof consisted of notes, post-dated checks or other credit advanced by us to Buyer or rebates or similar payments from us to the Buyer (however manufacturer rebates may constitute all or a part of the downpayment); all warranties, statements and signatures therein are true; there is owing thereon the Amount Financed plus earned Finance Charge as set forth therein; we are duly licensed under applicable laws of New Jersey and have duly complied with all requirements of the Retail Installment Sales Act of 1960, as amended, with respect to the transaction, and with the federal Truth-in-Lending and Equal Credit Opportunity Acts and with any other federal or state laws, rules or regulations applicable to this Contract; a motor vehicle title certificate showing a lien or encumbrance in favor of Assignee has been or will be applied for promptly; the registration of the vehicle has not been suspended and the Seller knows of no facts which may result in the suspension of said registration; the Buyer(s) in the within Contract is personally known to the Seller to be the same identical person(s) whose signature(s) is affixed to this Contract; and Seller has no knowledge of facts impairing the validity or value of the Contract. If any such warranties or representations should be breached at any time, Seller shall repurchase said Contract from Assignee, on demand, and will pay therefor the amount owing thereon, plus any and all costs and expenses paid or incurred by Assignee in respect thereto, including reasonable attorneys' fees, and said remedy shall be cumulative and not exclusive, and shall not affect any other right or remedy that Assignee might have at law or in equity against Seller. In the event that Buyer fails or refuses to make any payment due hereunder on the assertion, either oral or written, that the Vehicle is defective, not as represented to the Buyer by Seller, or that Seller refuses to honor any warranty or service agreement of Seller or manufacturer, Seller agrees that, on being advised by Assignee of such claim of Buyer, Seller will repurchase the Contract from Assignee and pay Assignee for same immediately in accordance with the repurchase terms set forth above, and Seller further agrees to hold Assignee harmless from any other claims of Buyer, including attorneys' fees, costs and expenses incurred in defending against claims asserted by Buyer and including claims for refunds of payments made by Buyer to Assignee.

For value received, Seller hereby sells, assigns and transfers unto the Assignee, its successors and assigns, the within Contract, all moneys due and to become due thereunder, and all right, title and interest in and to the Vehicle therein described, with full power in the Assignee in its or Seller's name to take such legal or other action which Seller might have taken save for this Assignment. By delivering this Contract to the Assignee and accepting payment for it, Seller authorizes the Assignee to complete or correct the identification of the Assignee to reflect the true Assignee who purchased this Contract and/or to sign Seller's name to this Assignment, without recourse, if the Assignment has been delivered and without Seller's signature.

☐ WITH FULL RECOURSE—Seller agrees that, in addition to the paragraph above titled "Assignment," in the event of default by Buyer in the full payment on the due date thereof of any installment payable under the Contract or in the prompt performance of any other obligation to be performed under the Contract by Buyer, Seller will, on demand by Assignee, forthwith repurchase the Contract from Assignee for a repurchase price in cash equal to the full unpaid balance of the Contract as of the date of such repurchase, plus any then earned Finance Charge.

☐ WITH REPURCHASE—Seller agrees that, in addition to the provisions of the paragraph above titled "Assignment," in the event of any default by Buyer which shall entitle Assignee to repossess the Vehicle, Seller will, if the Vehicle is repossessed by Assignee and delivered to Seller, and without regard to the then condition of the Vehicle, forthwith repurchase the Contract and the Vehicle from Assignee for a repurchase price in cash equal to the full unpaid balance of the Contract as of the date of such repurchase, plus any then earned Finance Charge.

By signing below, we agree to the terms of this Assignment.

Seller: Toyota of [illegible] [illegible] Route [illegible] P.O. Box [illegible] [illegible], NJ [illegible]

By: [signature] Title: Controller Date: 3/31/06

# EXHIBIT B

Appended to the:
Class Action Complaint and Jury Demand, Pollitt v. DRS Towing, LLC, et al.

7; 30051784

Wachovia Dealer Services, Inc.
REINSTATEMENTS CA6382, Wachovia Dealer Services, Inc., P.O. Box 3659, Rancho Cucamonga, CA 9172!
(Name and address of secured party)

9/11/2009
(Date)

# NOTICE OF OUR PLAN TO SELL PROPERTY (Consumer Goods)

Name: SHANEE N POLLITT

Address: REDACTED (Name and address of any obligor who is also a debtor)

Subject: Account Number: REDACTED
(Identification of transaction)

We have your 2002 TOYOTA CAMRY 4T1BE32K12U506955, because you broke promises in our agreement.

We will sell 2002 TOYOTA CAMRY 4T1BE32K12U506955 at private sale sometime after 09/21/09. A sale could include a lease or license.

The money that we get from the sale (after paying our costs) will reduce the amount you owe. If we get less money than you owe, you will still owe us the difference (unless, you are entitled to protection under the United States Bankruptcy Code). If we get more money than you owe, you will get the extra money unless we must pay it to someone else.

You can get the property back at any time before we sell it by paying us the full amount you owe (not just the past due payments), including our expenses. To learn the exact amount you must pay, call us at 1-888-937-9992.

If you want us to explain to you in writing how we have figured the amount that you owe us, you may call us at 1-888-937-9992 (or write us at REINSTATEMENTS CA6382, Wachovia Dealer Services, Inc., P.O. Box 3659, Rancho Cucamonga, CA 91729) and request a written explanation.

If you need more information about the sale, call us at 1-888-937-9992 or write us at REINSTATEMENTS CA6382, Wachovia Dealer Services, Inc., P.O. Box 3659, Rancho Cucamonga, CA 91729.

We are sending this notice to the following other people who have an interest in 2002 TOYOTA CAMRY 4T1BE32K12U506955 or who owe money under your agreement:

(Names of all other debtors and obligors, if any)

NOTICE: If you are entitled to protection under the United States Bankruptcy Code (11 U.S.C. §§ 362; 524) regarding the subject matter of this notice, the following applies to you: This communication is made for informational purposes only and we will not attempt to collect, assess or recover a claim in violation of the Bankruptcy Code

# EXHIBIT C

Appended to the:
Class Action Complaint and Jury Demand, Pollitt v. DRS Towing, LLC, et al.

FROM TD BANK NA 856 533 4795 (FRI)10. 9'09 14:38/ST. 14:32/NO. 48701977 7

# STATE LINE AUTO AUCTION

WAVERLY, NEW YORK

Date: 9/28/09

Fleet / Lease Co: Wachovia Dealer Services

Customer: Shanee Pollitt

Account # REDACTED

VIN # 4T1BE32K12U506955

| | | |
|---|---|---|
| Customer Picked Up Vehicle and Personal Property | YES | (NO) |
| Customer Picked Up Vehicle Only | (YES) | NO |
| Customer Picked Up Personal Property Only | YES | (NO) |

Charges:

1) Transportation from Sicklerville, NJ $ 369.00

2) Reconditioning @ $75.00 $ ______

3) Storage @ $10.00 per day $ 120.00

4) Admin. fee $ 75.00

5) Other charges ______ Keys 75.00 / Arms $ 5.00

Total Due / Paid $ 644.00

Paid Cash JAH

Property / Vehicle Release

Vehicle Received By: [signature] (Print) [signature] (Sign)

Property Received By: ______ (Print) ______ (Sign)

State Line Auto Auction Representative [signature] (Sign)

Transportation Department
Fax 607-565-3940

MAIN OFFICE
Phone 607-565-8151 • Fax 607-565-8659
PO Box 351, Waverly, New York 14892-0351
www.statelineauto.com

Factory Auction
Fax 607-565-7094

Appendix XII-B1



# CIVIL CASE INFORMATION STATEMENT (CIS)

Use for initial Law Division
Civil Part pleadings (not motions) under Rule 4:5-1
**Pleading will be rejected for filing, under Rule 1:5-6(c), if information above the black bar is not completed or if attorney's signature is not affixed.**

**FOR USE BY CLERK'S OFFICE ONLY**

PAYMENT TYPE: ☐CK ☐CG ☐CA
CHG/CK NO.
AMOUNT:
OVERPAYMENT:
BATCH NUMBER:

| ATTORNEY/PRO SE NAME | TELEPHONE NUMBER | COUNTY OF VENUE |
|---|---|---|
| Henry P. Wolfe, Esq. | (732) 257-0550 | Middlesex |

FIRM NAME (if applicable): Galex Wolf, LLC

DOCKET NUMBER (When available): MID-L- 473-10

OFFICE ADDRESS: 1520 US Highway 130, Suite 101, North Brunswick, NJ 08902

DOCUMENT TYPE: Class Action Complaint

JURY DEMAND: ☒ YES ☐ NO

NAME OF PARTY (e.g., John Doe, Plaintiff): Shanee N. Pollitt, on behalf of herself and those similarly situated, PLAINTIFF

CAPTION: Shanee N. Pollitt, on behalf of herself and others similarly situated vs. DRS Towing, LLC d/b/a Advanced Financial Services; Wachovia Dealer Servicess, Inc. d/b/a WDS, Inc., et al.

CASE TYPE NUMBER (See reverse side for listing): 508 COMPLEX COMMERCIAL

IS THIS A PROFESSIONAL MALPRACTICE CASE? ☐ YES ☒ NO

IF YOU HAVE CHECKED "YES," SEE N.J.S.A. 2A:53A-27 AND APPLICABLE CASE LAW REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT.

RELATED CASES PENDING? ☐ YES ☒ NO

IF YES, LIST DOCKET NUMBERS

DO YOU ANTICIPATE ADDING ANY PARTIES (arising out of same transaction or occurrence)? ☒YES ☐ NO

NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY, IF KNOWN ☐ NONE ☒ UNKNOWN

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE.**

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

DO PARTIES HAVE A CURRENT, PAST OR RECURRENT RELATIONSHIP? ☐YES ☒NO

IF YES, IS THAT RELATIONSHIP ☐ EMPLOYER-EMPLOYEE ☐ FRIEND/NEIGHBOR ☐ OTHER (explain) ☐ FAMILIAL ☐ BUSINESS

DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY? ☒ YES ☐ NO

USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR ACCELERATED DISPOSITION:

Plaintiff's putative class action alleged claims requires a Track IV.

DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS? ☐YES ☒ NO

IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION:

WILL AN INTERPRETER BE NEEDED? ☐YES ☒ NO

IF YES, FOR WHAT LANGUAGE:

**I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(b).**

ATTORNEY SIGNATURE:

**SIDE 2**



# CIVIL CASE INFORMATION STATEMENT (CIS)

Use for initial pleadings (not motions) under *Rule* 4:5-1

**CASE TYPES** (Choose one and enter number of case type in appropriate space on the reverse side.)

**Track I — 150 days' discovery**

151 NAME CHANGE
175 FORFEITURE
302 TENANCY
399 REAL PROPERTY (other than Tenancy, Contract, Condemnation, Complex Commercial or Construction)
502 BOOK ACCOUNT (debt collection matters only)
505 OTHER INSURANCE CLAIM (INCLUDING DECLARATORY JUDGMENT ACTIONS)
506 PIP COVERAGE
510 UM or UIM CLAIM
511 ACTION ON NEGOTIABLE INSTRUMENT
512 LEMON LAW
801 SUMMARY ACTION
802 OPEN PUBLIC RECORDS ACT (SUMMARY ACTION)
999 OTHER (Briefly describe nature of action)

**Track II — 300 days' discovery**

305 CONSTRUCTION
509 EMPLOYMENT (other than CEPA or LAD)
599 CONTRACT/COMMERCIAL TRANSACTION
603 AUTO NEGLIGENCE – PERSONAL INJURY
605 PERSONAL INJURY
610 AUTO NEGLIGENCE – PROPERTY DAMAGE
699 TORT – OTHER

**Track III — 450 days' discovery**

005 CIVIL RIGHTS
301 CONDEMNATION
602 ASSAULT AND BATTERY
604 MEDICAL MALPRACTICE
606 PRODUCT LIABILITY
607 PROFESSIONAL MALPRACTICE
608 TOXIC TORT
609 DEFAMATION
616 WHISTLEBLOWER / CONSCIENTIOUS EMPLOYEE PROTECTION ACT (CEPA) CASES
617 INVERSE CONDEMNATION
618 LAW AGAINST DISCRIMINATION (LAD) CASES
620 FALSE CLAIMS ACT

**Track IV — Active Case Management by Individual Judge / 450 days' discovery**

156 ENVIRONMENTAL/ENVIRONMENTAL COVERAGE LITIGATION
303 MT. LAUREL
508 COMPLEX COMMERCIAL
513 COMPLEX CONSTRUCTION
514 INSURANCE FRAUD
701 ACTIONS IN LIEU OF PREROGATIVE WRITS

**Centrally Managed Litigation (Track IV)**

280 Zelnorm
285 Stryker Trident Hip Implants

**Mass Tort (Track IV)**

248 CIBA GEIGY
266 HORMONE REPLACEMENT THERAPY (HRT)
271 ACCUTANE
272 BEXTRA/CELEBREX
274 RISPERDAL/SEROQUEL/ZYPREXA
275 ORTHO EVRA
277 MAHWAH TOXIC DUMP SITE
278 ZOMETA/AREDIA
279 GADOLINIUM
281 BRISTOL-MYERS SQUIBB ENVIRONMENTAL
282 FOSAMAX
283 DIGITEK
284 NUVARING
286 LEVAQUIN
601 ASBESTOS
619 VIOXX

**If you believe this case requires a track other than that provided above, please indicate the reason on Side 1, in the space under "Case Characteristics."**

Please check off each applicable category:

☐ Verbal Threshold ☒ Putative Class Action ☐ Title 59

Andrew R. Wolf, Esq.
Henry Wolfe, Esq.
Galex Wolf, LLC
1520 U.S. Highway 130 - Suite 101
North Brunswick, NJ 08902
(732) 257-0550 - tel
(732) 257-5654 - fax

Christopher J. McGinn
The Law Office of Christopher J. McGinn
P.O. Box 365
79 Paterson St.
New Brunswick, NJ 08901
(732) 937-9400 - tel
(800) 931-2408 - fax

*Attorneys for Shanee N. Pollitt and those similarly situated*

| | |
|---|---|
| Shanee N. Pollitt, on behalf of herself and those similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>DRS Towing, LLC d/b/a Advanced Financial Services; Wachovia Dealer Services, Inc. d/b/a WDS, Inc., WFS Financial, and WFS Financial, Inc.; and John Does 1 to 10,<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY<br>MIDDLESEX COUNTY - LAW DIVISION<br><br>Civil Action<br><br>Docket No.: MID-L-000473-10<br><br>**SUMMONS** |

The State of New Jersey, to the Named Defendant: **WACHOVIA DEALER SERVICES, INC. D/B/A WDS, INC., WFS FINANCIAL, AND WFS FINANCIAL INC.**

The Plaintiff(s), named above, have filed a lawsuit against you in the Superior Court of New Jersey. The Complaint attached to this Summons states the basis for this lawsuit. If you dispute this Complaint, you or your attorney must file a written Answer or Motion and proof of service with the Deputy Clerk of the Superior Court in the county listed above within 35 days from the date you received this Summons, not counting the date you received it. (The address of each Deputy Clerk of the Superior Court is provided.) If the Complaint is one in foreclosure, then you must file your written Answer or Motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, CN-971, Trenton, NJ 08625. A filing fee payable to

the Clerk of Superior Court and a completed Case Information Statement (available from the Deputy Clerk of the Superior Court) must accompany your Answer or Motion when it is filed. You must also send a copy of your Answer or Motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written Answer or Motion (with fee of $135.00 for Law Division and $135.00 for Chancery Division and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written Answer or Motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford to pay an attorney, you may call the Legal Services Office in the county where you live. A list of these offices is provided. If you do not have an attorney or are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A list of these numbers is also provided.

Dated: January 29, 2010

/s/Jennifer M. Perez
Jennifer M. Perez
Clerk of the Superior Court of New Jersey

*Name of defendant to be served*:

**WACHOVIA DEALER SERVICES, INC. D/B/A WDS, INC., WFS FINANCIAL, AND WFS FINANCIAL INC.**

*Address for service*:

Corporation Service Company, Registered Agent
830 Bear Tavern Road
West Trenton, NJ 08628
**(VIA ACTION SUBPOENA)**

ATLANTIC COUNTY:
Deputy Clerk of the Superior Court
Civil Division, Direct Filing
1201 Bacharach Blvd., 1st Floor
Atlantic City, NJ 08401
LAWYER REFERRAL
(609) 345-3444
LEGAL SERVICES
(609) 348-4200

BERGEN COUNTY:
Deputy Clerk of the Superior Court
Case Processing Section, Room 119
Justice Center
10 Main Street
Hackensack, NJ 07601-0769
LAWYER REFERRAL
(201) 488-0044
LEGAL SERVICES
(201) 487-2166

BURLINGTON COUNTY:
Deputy Clerk of the Superior Court
Central Processing Office
Attn: Judicial Intake
1st Floor, Courts Facility
49 Rancocas Road
Mt. Holly, NJ 08060
LAWYER REFERRAL
(609) 261-4862
LEGAL SERVICES
(609) 261-1088

CAMDEN COUNTY:
Deputy Clerk of the Superior Court
Civil Processing Office
1st Floor, Hall of Records
101 South Fifth Street
Camden, NJ 08103
LAWYER REFERRAL
(856) 964-4520
LEGAL SERVICES
(856) 964-2010

CAPE MAY COUNTY:
Deputy Clerk of the Superior Court
Central Processing Office
9 North Main Street
Box DN-209
Cape May Court House, NJ 08210
LAWYER REFERRAL
(609) 463-0313
LEGAL SERVICES
(609) 465-3001

CUMBERLAND COUNTY:
Deputy Clerk of the Superior Court
Civil Case Management Office
Broad & Fayette Streets, P.O. Box 615
Bridgeton, NJ 08302
LAWYER REFERRAL
(856) 692-6207
LEGAL SERVICES
(856) 451-0003

ESSEX COUNTY:
Deputy Clerk of the Superior Court
50 West Market Street
Room 131
Newark, NJ 07102
LAWYER REFERRAL
(973) 622-6207
LEGAL SERVICES
(973) 624-4500

GLOUCESTER COUNTY:
Deputy Clerk of the Superior Court
Civil Case Management Office, Attn: Intake
1st Floor, Court House
1 North Broad Street, P.O. Box 129
Woodbury, NJ 08096
LAWYER REFERRAL
(856) 848-4589
LEGAL SERVICES
(856) 848-5360

HUDSON COUNTY:
Deputy Clerk of the Superior Court
Superior Court, Civil Records Department
Brennan Court House, 1st Floor
583 Newark Avenue
Jersey City, NJ 07306
LAWYER REFERRAL
(201) 798-2727
LEGAL SERVICES
(201) 792-6363

HUNTERDON COUNTY:
Deputy Clerk of the Superior Court
Civil Division
65 Park Avenue
Flemington, NJ 08862
LAWYER REFERRAL
(908) 735-2611
LEGAL SERVICES
(908) 782-7979

MERCER COUNTY:
Deputy Clerk of the Superior Court
Local Filing Office, Courthouse
175 South Broad Street
P.O. Box 8068
Trenton, NJ 08650
LAWYER REFERRAL
(609) 585-6200
LEGAL SERVICES
(609) 695-6249

MIDDLESEX COUNTY:
Deputy Clerk of the Superior Court
Administration Building
3rd Floor
1 Kennedy Square, P.O. Box 2633
New Brunswick, NJ 08903-2633
LAWYER REFERRAL
(732) 828-0053
LEGAL SERVICES
(732) 249-7600

MONMOUTH COUNTY:
Deputy Clerk of the Superior Court
Court House, 71 Monument Park
P.O. Box 1269
Freehold, NJ 07728-1262
LAWYER REFERRAL
(732) 431-5544
LEGAL SERVICES
(732) 866-0020

MORRIS COUNTY:
Deputy Clerk of the Superior Court
Civil Division
30 Schuyler Place, P.O. Box 910
Morristown, NJ 07960-0910
LAWYER REFERRAL
(973) 267-5882
LEGAL SERVICES
(973) 285-6911

OCEAN COUNTY:
Deputy Clerk of the Superior Court
Court House, Room 119
118 Washington Street
Toms River, NJ 08754
LAWYER REFERRAL
(732) 240-3666
LEGAL SERVICES
(732) 341-2727

PASSAIC COUNTY:
Deputy Clerk of the Superior Court
Civil Division
Court House
77 Hamilton Street
Paterson, NJ 07505
LAWYER REFERRAL
(973) 278-9223
LEGAL SERVICES
(973) 345-7171

SALEM COUNTY:
Deputy Clerk of the Superior Court
92 Market Street
P.O. Box 18
Salem, NJ 08079
LAWYER REFERRAL
(856) 935-5628
LEGAL SERVICES
(856) 451-0003

SOMERSET COUNTY:
Deputy Clerk of the Superior Court
Civil Division Office
New Court House, 3rd Floor
P.O. Box 3000
Somerville, NJ 08876
LAWYER REFERRAL
(908) 685-2323
LEGAL SERVICES
(908) 231-0840

SUSSEX COUNTY:
Deputy Clerk of the Superior Court
Sussex County Judicial Center
43-47 High Street
Newton, NJ 07860
LAWYER REFERRAL
(973) 267-5882
LEGAL SERVICES
(973) 383-7400

UNION COUNTY:
Deputy Clerk of the Superior Court
1st Floor, Court House
2 Broad Street
Elizabeth, NJ 07207-6073
LAWYER REFERRAL
(908) 353-4715
LEGAL SERVICES
(908) 354-4340

WARREN COUNTY:
Deputy Clerk of the Superior Court
Civil Division Office
Court House, 413 Second Street
Belvidere, NJ 07823-1500
LAWYER REFERRAL
(973) 267-5882
LEGAL SERVICES
(973) 475-2010