**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY - TRENTON VICINAGE**

| | | |
|---|---|---|
| SHANEE N. POLLITT, on behalf of herself and all others similarly situated, | : | |
| | : | NO. 10-CV-01285 (AET) (DEA) |
| v. | : | |
| | : | |
| DRS TOWING, LLC, d/b/a ADVANCED FINANCIAL SERVICES, WACHOVIA DEALER SERVICES, INC. d/b/a WDS, INC., WFS FINANCIAL, WFS FINANCIAL, INC., STATE LINE AUTO AUCTION, INC. and JOHN DOES 1 to 10 | : : : : : : | **Motion Date: January 18, 2011** |

## ORDER

AND NOW, on this _____ day of _____, 2011, upon consideration of the Motion to Dismiss Pursuant to Fed. R. Civ. Pro. 12(b)(6) of defendant, State Line Auto Auction, Inc., and any responses thereto, it is hereby ORDERED and DECREED that the Motion is GRANTED, and plaintiff's claims against defendant, State Line Auto Auction, Inc. are DISMISSED WITH PREJUDICE.

BY THE COURT:

_____
U.S.D.J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY - TRENTON VICINAGE

SHANEE N. POLLITT, on behalf of herself and
all others similarly situated,

:

:

       NO. 10-CV-01285 (AET) (DEA)

:

v.

:

:

DRS TOWING, LLC, d/b/a ADVANCED
FINANCIAL SERVICES, WACHOVIA DEALER
SERVICES, INC. d/b/a WDS, INC., WFS
FINANCIAL, WFS FINANCIAL, INC., STATE
LINE AUTO AUCTION, INC. and
JOHN DOES 1 to 10

:

:

:

:

:

      **Motion Date: January 18, 2011**

      **Oral Argument Requested**

### NOTICE OF MOTION TO DISMISS
### PURSUANT TO FED. R. CIV. PRO. 12(B)(6)

PLEASE TAKE NOTICE that on **January 18, 2011**, defendant, State Line Auto Auction,

Inc. will move before the United States District Court for the District of New Jersey, Trenton

Vicinage, for the entry of an order Dismissing Plaintiff's Amended Complaint pursuant to Federal

Rule of Civil Procedure 12(b)(6).

Moving defendant will rely upon the attached brief in support of its motion.

Oral argument is requested unless this matter is unopposed.

             **BENNETT, BRICKLIN & SALZBURG LLC**

      BY:  s/ Warren F. Sperling
           WARREN F. SPERLING, ESQUIRE
           NICHOLAS A. CUMMINS, ESQUIRE
           Executive Mews, Suite H-43
           1930 E. Marlton Pike
           Cherry Hill, NJ 08003
           (856) 751-5285
           (856) 751-5281 - fax
           Email: sperling@bbs-law.com
           Email: cummins@bbs-law.com
           Attorneys for defendant,
Date:  December 23, 2010       State Line Auto Auction, Inc.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY - TRENTON VICINAGE**

| | | |
|---|---|---|
| SHANEE N. POLLITT, on behalf of herself and all others similarly situated, | : : | |
| v. | : : : | NO. 10-CV-01285 (AET) (DEA) |
| DRS TOWING, LLC, d/b/a ADVANCED FINANCIAL SERVICES, WACHOVIA DEALER SERVICES, INC. d/b/a WDS, INC., WFS FINANCIAL, WFS FINANCIAL, INC., STATE LINE AUTO AUCTION, INC. and JOHN DOES 1 to 10 | : : : : : : | **Motion Date: January 18, 2011** **Oral Argument Requested** |

**BRIEF OF DEFENDANT, STATE LINE AUTO AUCTION, INC.,**
**IN SUPPORT OF MOTION DISMISS PLAINTIFF'S AMENDED**
**COMPLAINT PURSUANT TO FED. R. CIV. PRO. 12(b)(6)**

**BENNETT, BRICKLIN & SALZBURG LLC**
BY: WARREN F. SPERLING, ESQUIRE
NICHOLAS A. CUMMINS, ESQUIRE
Executive Mews, Suite H-43
1930 E. Marlton Pike
Cherry Hill, NJ 08003
(856) 751-5285
(856) 751-5281 - fax
Email: sperling@bbs-law.com
Email: cummins@bbs-law.com
Attorneys for defendant,
State Line Auto Auction, Inc.

Date:   December 23, 2010

# TABLE OF CONTENTS

Table of Citations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I.     SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    FACTUAL OVERVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III.   ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

       A.     Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

       B.     Plaintiff has Failed to State a Cause of Action Under the New Jersey
              Consumer Fraud Act. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

IV.    CONCLUSIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

# TABLE OF CITATIONS

## Case Law

Arc Networks, Inc. v. Gold Phone Card Co.,
    756 A.2d 636 (N.J. Super. L. Div. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Barry v. Arrow Pontiac,
    494 A.2d 804 (N.J. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Bell Atlantic Corp. v. Twombly,
    127 S. Ct. 1955 (U.S. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Boyko v. A.I.G., Inc.,
    2009 WL 5194431 (D.N.J. Dec. 23, 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5-7

Daaleman v. Elizbethtown Gas Co.,
    390 A.2d 566 (N.J. 1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Hoffman v. Encore Capital Group, Inc.,
    2008 WL 5245306 (N.J. Super. App. Div. Dec. 18, 2008). . . . . . . . . . . . . . . . . . . . . 7

Joe Hand Promotions, Inc. v. Mills,
    567 F. Supp.2d 719 (D.N.J. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Kavky v. Herbalife Int. of America,
    820 A.2d 677 (N.J. Super. App. Div. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 9

Kost v. Kozakiewwicz,
    1 F.3d 176 (3d Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Lemelledo v. Beneficial Mgmt. Corp. of Am.,
    696 A.2d 546 (N.J. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Maintainco, Inc. v. Mitsubishi Caterpillar Forklift America, Inc.,
    2006 WL 1982735 (N.J. Super. Gen. Eq. Div. June 5, 2006). . . . . . . . . . . . . . . . . . . 9

Maio v. Aetna, Inc.,
    221 F.3d 472 (3d Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Morse v. Lower Merion School District,
    132 F.3d 902 (3d Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Nami v. Fauver,
     82 F.3d 63 (3d Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Prof. Cleaning & Innovative Bldg. Svcs., Inc. v. Kennedy Funding, Inc.,
     2009 WL 1651131 (D.N.J. Jun. 12, 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Real v. Radir Wheels, Inc.,
     969 A.2d 1069 (N.J. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Sands v. McCormick,
     502 F.3d 263 (3d Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Viking Yacht Co. v. Composites One LLC,
     496 F. Supp.2d 462 (D.N.J. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

## Statutes and Rules

Fed. R. Civ. Pro. 4(d)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. Civ. Pro. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

N.J.S.A. 56:8-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6

N.J.S.A. 56:8-2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6

I.    **SUMMARY OF ARGUMENT**

Plaintiff's claims against defendant, State Line Auto Auction, Inc. ("State Line") should be dismissed with prejudice because State Line is not alleged to have engaged in the "sale" or "advertisement" of "merchandise" as required to state a cause of action under the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-2.

II.   **FACTUAL OVERVIEW**

On November 25, 2010, plaintiff delivered a copy of her Amended Complaint to State Line by way of federal express along with a request to waive service of process. State Line subsequently executed and returned the waiver of service to plaintiff. This motion is, therefore, timely filed. See Fed. R. Civ. Pro. 4(d)(3).

In this case, plaintiff, Shanee Pollitt, on behalf of herself and those similarly situated, seeks to recover for expenses she allegedly incurred as a result of the repossession of her vehicle by defendant, Wachovia Dealer Services.  See Exhibit A, Amended Complaint (exhibits omitted). Although plaintiff's Amended Complaint sets out several causes of action against the various defendants, the only claims asserted against State Line are for alleged violations of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq*..  Exhibit A at Count Two.

Plaintiff alleges that on Mach 24, 2006, she entered into a Retail Installment Sales Contract ("RISC") with Toyota of Runnemede to finance the purchase of a 2002 Toyota Camry.  Exhibit A at ¶ 15.  Toyota of Runnemede then assigned the RISC to defendant, Wachovia Dealer Services, Inc. ("Wachovia").  Id.  The RISC allegedly set forth Wachovia's right to repossess and auction plaintiff's vehicle in the event of a default, as well as the procedure by which plaintiff could "redeem" her vehicle if it was repossessed.  Id. at ¶¶ 16-19.

When plaintiff defaulted on her financing agreement, Wachovia repossessed the vehicle on September 10, 2009. Id. at ¶ 25. The repossession was accomplished by defendant, DRS Towing, LLC, allegedly acting as Wachovia's agent, who removed the vehicle from the front of plaintiff's home and transported it to DRS Towing's facility in Sicklerville, New Jersey. Id. at ¶¶ 25-27. DRS towing then removed plaintiff's personal possessions from the vehicle, before it was transported to State Line's auction facility in Waverly, New York. Id. at ¶¶ 28-29. Plaintiff alleges that "State Line had been contracted by Wachovia to perform certain services related to the sale of vehicles that Wachovia repossessed from Plaintiff and other New Jersey residents." Id. at ¶ 56.

After learning of the repossession of her vehicle, plaintiff alleges that she contacted Wachovia and requested the exact amount required to redeem her vehicle; however, the figure provided to plaintiff was not the exact amount required. Id. at ¶¶ 30-36. Specifically, plaintiff was told that the amount needed to redeem the vehicle was $9,534.26, Id. at ¶ 46, but she was allegedly never told that she would be required to pay additional fees charged by State Line and DRS. Id. at ¶¶ 37-42, 47. Plaintiff alleges that Wachovia was not aware of the amount of these fees because "its system of dealing with State Line did not result in State Line providing Wachovia with bills for services unless and until State Line sold the repossessed vehicle." Id. at ¶ 44. After making this payment to Wachovia, plaintiff was informed that her vehicle was located at State Line's facility and that plaintiff had to contact State Line to make arrangements to pickup the vehicle. Id. at ¶¶ 54-55.

Plaintiff then contacted State Line, which informed her that she would have to come to State Line's facility to pick up the vehicle, and that she would need to pay more than six hundred dollars in various fees in cash before her vehicle would be released. Id. at ¶¶ 59-61. Plaintiff alleges that this was the first time she was told that she would be required to pay fees in addition to the sum she

2

paid Wachovia. Id. at ¶ 60.  Plaintiff then traveled by bus to State Line's facility, where she was charged and paid fees for transportation ($369.00), storage ($120.00), administration ($75.00), keys ($75.00), and an unspecified charge ($5.00). Id. at ¶¶ 69-73.  State Line then released her vehicle, and plaintiff drove it home the same day. Id. at ¶¶ 77-79.  Plaintiff later obtained her personal property from DRS Towing's facility, where she was charged additional fees. Id. at ¶¶ 91-94.

Plaintiff alleges that Wachovia authorized State Line not to release the vehicle unless plaintiff first paid State Line's fees, that Wachovia knew State Line would not release the vehicle until its fees were paid, and that it was "Wachovia's policy" that State Line would retain the vehicle until State Line's fees were paid. Id. at ¶¶ 62-64, 66.  Plaintiff further alleges that State Line acted as Wachovia's agent in collecting these fees, and in refusing to release the vehicle until the fees were paid. Id. at ¶¶ 74-75.

Plaintiff alleges State Line breached its contract *with Wachovia* in charging these fees, in that the Wachovia/State Line contract did not permit State Line to charge fees for storage, transportation, or keys. Id. at ¶¶ 80, 84, 86.  Plaintiff further alleges (apparently in the alternative) that State Line's charge for storage and transportation were in excess of the amounts permitted by the Wachovia/State Line contract, Id. at ¶¶ 81-85, and that Wachovia was aware that State Line would charge fees excess of the contract amounts. Id. at ¶ 65.  Plaintiff further alleges that the contract between Wachovia and State Line required State Line to make its records available for audit by Wachovia, but that Wachovia did not conduct an audit "at any time relevant" to this suit. Id. at ¶ 88.

Count Two of plaintiff's complaint alleges that State Line violated the New Jersey Consumer Fraud Act.  Specifically, plaintiff contends State Line engaged in "unconscionable commercial practices, deception, fraud, false promises, false pretenses and/or misrepresentations" (1) "as

3

specified above" in its interactions with plaintiff and the relevant class; (2) "by charging [plaintiff] and those similarly situated fees as a condition for the release of their motor vehicles;" and (3) "by charging [plaintiff] and those similarly situated fees not permitted by the contract between State Line and Wachovia." Id. at ¶¶ 195-197[1]. Plaintiff seeks, among other things, compensatory damages and treble damages as permitted by the New Jersey Consumer Fraud Act. Id. at Ad Damnum Clause.

## III.   ARGUMENT

Plaintiff's claims against State Line should be dismissed with prejudice, because State Line is not alleged to have engaged in the "sale" or "advertisement" of "merchandise" as is required to state a cause of action under the New Jersey Consumer Fraud Act.

### A.   Standard of Review

Federal Rule of Civil Procedure 12(b)(6) permits a party to move for the dismissal of a claim for the "failure to state a claim for which relief can be granted" in a pre-pleading motion. Fed. R. Civ. Pro. 12(b)(6). To survive a motion to dismiss, a complaint must allege facts that adequately set forth each of the essential elements of a cause of action. Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996). Although the Court must accept all well-pleaded factual allegations contained in the complaint, it need not credit bare allegations, conclusory assertions or unwarranted factual inferences. Maio v. Aetna, Inc., 221 F.3d 472, 485 n.12 (3d Cir. 2000); Morse v. Lower Merion School District, 132 F.3d 902, 906 (3d Cir. 1997); Kost v. Kozakiewwicz, 1 F.3d 176, 183 (3d Cir.

---

[1]Plaintiff's complaint also alleges that "The personal property contained in the vehicles of Ms. Pollitt and those Members of Class B could not be lawfully taken and held by Defendants State Line and Wachovia pursuant to self-help repossession." Exhibit A at ¶ 190. It is assumed that the reference to State Line in this paragraph is a typographical error, since it is DRS and not State Line who is alleged to have taken possession of plaintiff's personal property, Id. at ¶¶ 28, 89-94, and because "Class B" is defined to include only those who were charged a fee by DRS for the return of personal property taken by DRS. Id. at ¶ 149.

1993). Bald assertions and conclusions of law will similarly not survive a motion to dismiss. <u>Sands v. McCormick</u>, 502 F.3d 263, 268 (3d Cir. 2007) (citations omitted). In short, the complaint's "[f]actual allegations **must be enough to raise a right to relief above the speculative level**..., on the assumption that all the allegations in the complaint are true (even if doubtful in fact)...." <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct. 1955, 1964-65 (U.S. 2007) (emphasis added, citations omitted). When a complaint fails to meet this standard, a motion under 12(b)(6) is properly granted.

### B.   Plaintiff has Failed to State a Cause of Action Under the New Jersey Consumer Fraud Act.

Plaintiff's claims against State Line should be dismissed because plaintiff has failed to allege that State Line engaged in the "sale" or "advertisement" of "merchandise" as required to state a cause of action under the New Jersey Consumer Fraud Act (CFA).

"The Consumer Fraud Act, originally enacted in 1960, is aimed basically at unlawful sales and advertising practices designed to induce consumers to purchase merchandise or real estate." <u>Real v. Radir Wheels, Inc.</u>, 969 A.2d 1069, 1075 (N.J. 2009), <u>quoting</u>, <u>Daaleman v. Elizbethtown Gas Co.</u>, 390 A.2d 566, 568 (N.J. 1978). It "is intended to protect consumers, 'by eliminating sharp practices and dealings in the marketing of merchandise and real estate.'" <u>Lemelledo v. Beneficial Mgmt. Corp. of Am.</u>, 696 A.2d 546, 550 (N.J. 1997) (citations omitted); <u>Real</u>, 969 A.2d at 1075. Thus, its purpose is "to root out consumer fraud." <u>Id.</u> at 551, <u>citing</u>, <u>Barry v. Arrow Pontiac</u>, 494 A.2d 804 (N.J. 1985).

Due to its focus on consumer fraud, "the CFA does not cover every transaction; instead, 'its applicability is limited to consumer transactions which are defined both by the status of the parties and the nature of the transaction itself.'" <u>Boyko v. A.I.G., Inc.</u>, 2009 WL 5194431 at *3 (D.N.J. Dec.

5

23, 2009), quoting, Arc Networks, Inc. v. Gold Phone Card Co., 756 A.2d 636, 638 (N.J. Super. L.

Div. 2000).  As such, a plaintiff must show both that he was a "consumer" and that he purchased

"merchandise."  Id., citing, Viking Yacht Co. v. Composites One LLC, 496 F. Supp.2d 462, 473

(D.N.J. 2007).

      To this end, the conduct declared unlawful by the CFA is limited only to unconscionable

conduct in connection with the sale or advertisement of merchandise to a consumer.  The Act

provides, in relevant part:

> The act, use or employment by any person of any unconscionable commercial
> practice, deception, fraud, false pretense, false promise, misrepresentation, or the
> knowing concealment, suppression or omission of any material fact with the intent
> that others rely upon such concealment... **in connection with the sale or
> advertisement of any merchandise** or real estate, or with the subsequent
> performance of such person as aforesaid, whether or not any person has in fact been
> misled... is declared to be an unlawful practice...

N.J.S.A. 56:8-2 (emphasis added). Thus, by its terms, the CFA extends only to unconscionable

conduct employed in connection with the "sale" of "merchandise."  A "sale" is defined to include

"any sale, rental or distribution, offer for sale, rental or distribution or attempt directly or indirectly

to sell rent or distribute."  N.J.S.A. 56:8-1(e).  "Merchandise" is defined to include "any objects,

wares, goods, commodities, services or anything offered, directly or indirectly **to the public** for

sale."  N.J.S.A. 56:8-1(c) (emphasis added).  In other words, "the Act is concerned not so much with

the specific nature of the property, but rather with whether the property is generally made available

to the public."  Kavky v. Herbalife Int. of America, 820 A.2d 677, 683 (N.J. Super. App. Div. 2003).

In sum, when a defendant's conduct is not undertaken in connection with the sale of merchandise

to the general public, the CFA provides no cause of action.

      These principles are aptly demonstrated by the recent decision of Judge Kugler of this Court

6

in Boyko v. A.I.G., Inc., 2009 WL 5194431 (D.N.J. Dec. 23, 2009).   In Boyko, the plaintiff

purchased an insurance policy from AIG, and, after the expiration of the initial policy period,

determined not to renew it.   AIG charged the plaintiff a pro rata portion of the premium for the

period of time the insurance was in effect prior to his non-renewal, which plaintiff claimed was in

violation of the provisions of the insurance policy.   Id. at *1.   When plaintiff refused to pay, AIG

turned the claim over to a debt collection agency, which eventually succeeded in extracting payment

from the plaintiff.   Id.   Plaintiff then filed suit against the debt collector, alleging, among other

things, violations of the CFA.   Id.   at **1-2.

The debt collector filed a 12(b)(6) motion to dismiss the CFA claim on the ground that it was

not alleged to have engaged in the sale of merchandise within the CFA, and the District Court

agreed.   The court found,

> Plaintiff's CFA claim must fail because [debt collector] did not sell any merchandise
> or real estate to him.   The alleged violation here occurred when [debt collector] called
> and sent notices to Plaintiff regarding a debt that he purportedly does not owe.
> However, [debt collector's] notices were not offers to sell - and Plaintiff did not buy
> anything. [Debt collector] was not selling insurance..., and [debt collector] was most
> certainly not selling debt. **Its mere debt collection efforts on behalf of a third
> party who might have sold merchandise is not itself a sale of merchandise.**
> ...These facts are insufficient to show misrepresentation or an unconscionable
> practice "in connection with the sale" of merchandise or real estate.

Id. at *4 (citations omitted, emphasis added).   As such, the court granted the debt collector's motion

and dismissed the CFA claim[2].   Id. at *5; see Hoffman v. Encore Capital Group, Inc., 2008 WL

5245306 (N.J. Super. App. Div. Dec. 18, 2008) (debt collectors do not sell merchandise to the public

---

[2]The CFA claim was dismissed with leave to amend to plead facts showing a conspiracy
between AIG and the debt collector to defraud the plaintiff through the sale of the insurance
policy, although the court did not address whether such a claim would ultimately withstand
scrutiny.   Id. at **4, 6.   In either event, plaintiff pleads no fraud in this case, let alone a
conspiracy to defraud.   See Fed. R. Civ. Pro. 9(b) (fraud to be alleged with specificity).

7

within the meaning of the CFA); <u>Joe Hand Promotions, Inc. v. Mills</u>, 567 F. Supp.2d 719 (D.N.J. 2008) (sending of fraudulent letter to induce monetary payment for alleged licensing infringement in lieu of litigation was not part of a sale of merchandise).

As was the case in <u>Boyko</u>, State Line is not alleged to have engaged in the sale of any merchandise or to have performed any conduct in connection with the sale of merchandise. The sum total of plaintiff's allegations against State Line is that after plaintiff purchased the vehicle, after the RISC was assigned to Wachovia, after Wachovia repossessed the vehicle, after the vehicle was transported to State Line's facility, and after plaintiff paid Wachovia to redeem the vehicle, that State Line then charged plaintiff fees not permitted in its contract with Wachovia to release the vehicle. State Line did not sell the vehicle or the financing, nor were its actions taken in connection with the sale or financing of the vehicle. To the contrary, State Line is alleged only to have charged fees for costs it incurred in performing its separate and unrelated contract with Wachovia to hold and auction Wachovia's repossessed vehicles. In other words, State Line's conduct was neither directly nor indirectly related to the initial sale, but rather, to its separate contract to perform services for Wachovia. Just as the "mere debt collection efforts on behalf of a third party who might have sold merchandise" was not sufficient to constitute a "sale of merchandise" in <u>Byoko</u>, State Line's efforts to convert the vehicle into liquid assets in performance of its separate contract with Wachovia, who might have sold the vehicle, is also not a sale of merchandise. Simply put, State Line played no part in the sale of the vehicle to plaintiff.

Furthermore, the fact that State Line charged plaintiff the fees does not transform its contract with Wachovia into a merchandise sale with the plaintiff. State Line offered no goods, services, commodities or anything else to the plaintiff in exchange for the fees, nor can it be fairly said that

8

the payment of the fees was part of any "sale, rental or distribution" to the plaintiff. At most, the fees represented State Line's attempt to recoup from plaintiff costs it incurred in performing its agreement with Wachovia, which Wachovia was no longer reimbursing because the vehicle had been redeemed. It simply cannot be fairly said that State Line's charging of fees to the plaintiff constituted the sale of merchandise within the meaning of the CFA.

Moreover, even if State Line's charging of fees could somehow be construed to constitute a sale of goods or services, it was not a sale of goods or services "to the public," which is required to fit within the definition of "merchandise." See Prof. Cleaning & Innovative Bldg. Svcs., Inc. v. Kennedy Funding, Inc., 2009 WL 1651131 (D.N.J. Jun. 12, 2009) ("hard money financing" offered only to sophisticated business entities and not he general public is not "merchandise"); Maintainco, Inc. v. Mitsubishi Caterpillar Forklift America, Inc., 2006 WL 1982735 (N.J. Super. Gen. Eq. Div. June 5, 2006) (franchising agreement offered only to select specialty distributors not a sale to the general public); compare, Kavky v. Herbalife Int. of America, 820 A.2d 677, 683 (N.J. Super. App. Div. 2003) (franchising agreement offered and available to the public at large constitutes "merchandise"). The fees in this case were not offered to the public at large. Rather, the fees were "offered" only to Wachovia or the plaintiff, as the person who redeemed the vehicle. As such, even if the charging of fees was a sale of goods or services within the CFA, plaintiff still fails to plead a cause of action because the goods or services (i.e. the fees) were not offered to the public and, therefore, do not constitute "merchandise" within the meaning of the Act.

Since plaintiff has pled no facts suggesting that State Line's conduct was undertaken in connection with its "sale" of "merchandise" to the public at large, plaintiff has failed to state a cause of action under the New Jersey Consumer Fraud Act, and her claims against State Line should be

9

dismissed with prejudice.

## IV.   **CONCLUSIONS**

Plaintiff's claims against State Line for alleged violations of the New Jersey Consumer Fraud

Act should be dismissed with prejudice because State Line's conduct in charging plaintiff fees it

incurred in processing its repossessed vehicle for auction did not constitute the sale of merchandise

to the general public, nor was its conduct undertaken in connection with the original sale of the

vehicle to the plaintiff (in which State Line did not participate).   Since the Consumer Fraud Act

applies only to actions taken in connection with the "sale" of "merchandise," plaintiff has failed to

state a cause of action and her claims against State Line should be dismissed.

**BENNETT, BRICKLIN & SALZBURG LLC**

BY:  s/ Warren F. Sperling
WARREN F. SPERLING, ESQUIRE
NICHOLAS A. CUMMINS, ESQUIRE
Executive Mews, Suite H-43
1930 E. Marlton Pike
Cherry Hill, NJ 08003
(856) 751-5285
(856) 751-5281 - fax
Email: sperling@bbs-law.com
Email: cummins@bbs-law.com
Attorneys for defendant,
State Line Auto Auction, Inc.

Date:   December 23, 2010

10

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY - TRENTON VICINAGE

| | | |
|---|---|---|
| SHANEE N. POLLITT, on behalf of herself and all others similarly situated, | : : : | |
| v. | : : | NO. 10-CV-01285 (AET) (DEA) |
| DRS TOWING, LLC, d/b/a ADVANCED FINANCIAL SERVICES, WACHOVIA DEALER SERVICES, INC. d/b/a WDS, INC., WFS FINANCIAL, WFS FINANCIAL, INC., STATE LINE AUTO AUCTION, INC. and JOHN DOES 1 to 10 | : : : : : : | **Motion Date: January 18, 2011**  **Oral Argument Requested** |

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that true and correct copies of the foregoing Motion to Dismiss were served on this date upon all interested counsel by electronic filing with the court or regular mail, postage pre-paid, addressed as follows:

Christopher J. McGinn, Esquire
79 Paterson Street, P.O. Box 365
New Brunswick, NJ 08901-0365

Henry Paul Wolfe, Esquire
Galex Wolf LLC
1520 US Highway 130, Suite 101
New Brunswick, NJ 08902

Michael K. Willison, Esquire
Dickie, McCamey & Chilcote
41 South Haddon Ave, Suite 5
Haddonfield, NJ 08033

Emily A. Kaller, Esquire
Greenbaum Rowe Smith & Davis, LLP
Metro Corporate Campus One
P.O. Box 5600
Woodbridge, NJ 07095

**BENNETT, BRICKLIN & SALZBURG LLC**

BY:  s/ Warren F. Sperling
      WARREN F. SPERLING, ESQUIRE
      NICHOLAS A. CUMMINS, ESQUIRE
      Executive Mews, Suite H-43
      1930 E. Marlton Pike
      Cherry Hill, NJ 08003
      (856) 751-5285
      (856) 751-5281 - fax
      Email: sperling@bbs-law.com
      Email: cummins@bbs-law.com
      Attorneys for defendant,
Date:  December 23, 2010     State Line Auto Auction, Inc.

# Exhibit A

Galex Wolf, LLC
1520 U.S. Highway 130 - Suite 101
North Brunswick, NJ 08902
(732) 257-0550 - tel
(732) 257-5654 - fax

The Law Office of Christopher J. McGinn
P.O. Box 365
79 Paterson St.
New Brunswick, NJ  08901
(732) 937-9400 - tel
(800) 931-2408 - fax

Attorneys for Shanee N. Pollitt and those similarly situated

## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF NEW JERSEY – TRENTON VICINAGE

Shanee N. Pollitt, on behalf of herself
and those similarly situated,

    Plaintiff,

      vs.

DRS Towing, LLC, d/b/a Advanced
Financial Services; Wachovia Dealer
Services, Inc. d/b/a WDS, Inc., WFS
Financial, and WFS Financial Inc.; State
Line Auto Auction Inc.; and John Does 1
to 10,

    Defendants.

ELECTRONICALLY FILED

CIVIL ACTION NO.: 3:10-cv-01285-AET-DEA

**AMENDED COMPLAINT**

**PLAINTIFF DEMANDS TRIAL BY JURY**

## NATURE OF THE CASE

1. Plaintiff brings this action on behalf of herself and those similarly situated against

    Defendants Wachovia Dealer Services, Inc. (Wachovia), a financial services company,

    DRS Towing, LLC (DRS), a repossession towing company, and State Line Auto Auction

    Inc. (State Line), an automobile auction house, for unlawfully exploiting the New Jersey

    consumers whose vehicles were repossessed by Wachovia.

2.    Wachovia repossessed Plaintiff's vehicle and failed to provide her with accurate information as to the exact amount necessary to redeem the vehicle as mandated by New Jersey law. In addition to misrepresenting the redemption amount, Wachovia required Plaintiff to travel approximately 233 miles from her home in New Jersey to an auto auction in upstate New York and pay more than $1,000 in repossession related fees. Also, Wachovia's form retail installment sales contract and repossession notice contain provisions that violate the clearly established rights of New Jersey consumers.

3.    Plaintiff brings claims against Wachovia on behalf of herself and those similarly situated under the Uniform Commercial Code N.J.S.A. 12A:1-101 *et seq.* (NJUCC), the Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq.* (CFA), and the Truth-in-Consumer Contract, Warranty, and Notice Act, N.J.S.A. 56:12-14 *et seq.* (TCCWNA), seeking monetary damages, injunctive remedies, and other relief.

4.    Defendant DRS repossessed Plaintiff's vehicle, removed her personal possessions, and then refused to release the property unless she paid its unlawful reclamation fee, which was not permitted by Wachovia's contract with DRS.

5.    After paying Wachovia the $9,534.26 it demanded for the redemption of her vehicle, State Line informed Plaintiff she would have to pay it more than $600 in cash before it would release her car. The fees demanded by State Line were in excess of the fees permitted by Wachovia's contract with State Line.

6.    Wachovia allowed its vendors to charge Plaintiff and those similarly situated excessive fees and to withhold their property as a means to compel payment.

7.    Holding property hostage to compel payment of illegitimate fees is an unconscionable business practice and a misrepresentation under the New Jersey Consumer Fraud Act.

Plaintiff brings claims against DRS, State Line, and Wachovia on behalf of herself and those similarly situated seeking monetary damages, injunctive remedies, and other relief.

## JURISDICTION

8.  Plaintiff filed her Complaint in New Jersey Superior Court. Wachovia removed the case, with the permission of DRS, citing a claim of "original jurisdiction pursuant to 28 U.S.C. § 1332(d)(A), as amended by the Class Action Fairness Act, Pub. L. No. 109-2, 119 Stat. 4 (2005), and is one that may be removed to this Court pursuant to the provisions of 28 U.S.C. §§ 1446 and 1453. In its Notice of Removal, Wachovia alleged "Plaintiff's allegations and prayer for relief place more than $5,000,000 "in controversy" based on its estimate that the Classes identified by Plaintiff "contain in excess of 2,000 members."

## ALLEGATIONS OF FACT

9.  Plaintiff Shanee N. Pollitt is a nursing student who resides at 316 Tillman Ave., Lawnside, New Jersey.

10. Defendant Wachovia Dealer Services (Wachovia), doing business as WDS, Inc., WFS Financial, and WFS Financial Inc., is in the business of servicing motor vehicle loans. It is a subsidiary of Wachovia Bank, N.A.

11. Wachovia is wholly-owned by Wells Fargo & Company.

12. DRS Towing LLC, doing business as Advanced Financial Services, (DRS) is a towing and repossession company with a main business address of 957 Sicklerville Rd., Sicklerville, New Jersey.

13. Defendant State Line Auto Auction Inc. (State Line) is a company located at 830 Talmadge Hill Rd., Waverly, New York and conducts automobile auctions.

14. Defendant John Does 1 to 10 are fictitious names of individuals and businesses alleged

for the purpose of substituting names of Defendants whose identity may be disclosed in discovery and should be made parties to this action.

15. On or about March 24, 2006, Plaintiff entered a retail installment sales contract (RISC) to finance the purchase of a 2002 Toyota Camry from Toyota of Runnemede that assigned the RISC to Wachovia. A copy of the RISC is attached as **Exhibit A.**

16. The RISC contains the following provisions concerning Plaintiff's rights if the vehicle would be repossessed: "In addition to any rights we may have under law, upon any default" the creditor's rights include the following provisions…

> ➤ "The right to require you to pay our actual necessary and reasonable costs of retaking and storing the Goods which are authorized by law."
> ➤ "We may take any other things founds (*sic*) in the Goods but will return these things to you if you ask… in a letter sent to us by certified mail within a reasonable time."
> ➤ "In the event of a sale, we will give you at least 10 days reasonable notice of the time and, if a public sale, also the place of sale."
> ➤ "You authorize us to peacefully enter any premises where the Goods may be in order to take possession of the Goods and remove them."

17. The RISC also includes the following provision: "We will apply payments in the following order: interest, late charges, fees, and then principal."

18. The RISC also includes the following provision: "The law gives us a right of set-off in any of your property in our possession… If you default, the Assignee may exercise the right to set-off and apply any of your property in the Assignee's possession, including deposit accounts, to sums you owe on this Contract."

19. The RISC states that payments must be made at any office of "WFS Financial Inc."

20. Wachovia provided the form RISC contract to Toyota of Runnemede for the purpose of entering retail installment contracts that would be assigned to Wachovia.

21.   Wachovia drafted the form RISC used in Plaintiff's transactions.

22.   Wachovia required that car dealers use an approved form of RISC as a condition of Wachovia accepting assignment.

23.   Wachovia accepted assignment of the form of RISC utilized in Plaintiff's transaction more than 500 times prior to its acceptance of the assignment of Plaintiff's RISC.

24.   Wachovia provided RISC forms the same or similar to that used in the transaction with Plaintiff to other New Jersey motor vehicle dealers.

25.   On or about September 10, 2009 Defendant DRS took possession of Plaintiff's Camry while the vehicle was parked near her residence.

26.   Employees or agents of Defendant DRS took possession of the Camry acting on behalf of Wachovia.

27.   Employees or agents of Defendant DRS took the Camry to its facilities in Sicklerville, New Jersey.

28.   Employees or agents of Defendant DRS removed the personal possessions of Plaintiff from the Camry before the vehicle was then transported from Sicklerville, New Jersey to State Line Auto Auction located in Waverly, New York.

29.   When Defendant DRS took the Camry, a number of Plaintiff's personal possessions were inside the vehicle, including her school textbooks.

30.   When Plaintiff realized her vehicle had been repossessed, she contacted Wachovia to inquire as to how she could redeem the vehicle.

31.   Wachovia sent Plaintiff a "Notice of Our Plan to Sell Property" (Notice), a copy of which is attached as **Exhibit B**.  Plaintiff's account number has been redacted from the exhibit.

32.   The Notice includes the following provisions:

> ➢ "You can get the property back at any time before we sell it by paying us the full amount you owe (not just the past due payments), including our expenses. To learn the exact amount you must pay, call us at 1-888-937-9992."

> ➢ "We will sell 2002 Toyota Camry [VIN redacted] at private sale sometime after 9/21/09."

> ➢ If you want us to explain to you in writing how we have figured the amount that you owe us, you may call us at 1-888-937-9992 (or write us at REINSTATEMENTS CA6382 Wachovia Dealers Services, Inc., P.O. Box 3659, Rancho Cucamongo, CA 91729 and request a written explanation.

33.   The Notice did not provide Plaintiff with notice of the date or time of the private sale.

34.   Plaintiff called Wachovia as instructed to learn the exact amount she would have to pay to redeem her Camry.

35.   Plaintiff asked the Wachovia representative for the exact amount necessary to redeem her vehicle.

36.   The Wachovia representative was asked for the redemption amount and in response to that inquiry did not provide the exact amount that Plaintiff would have to pay to redeem the vehicle.

37.   The Wachovia representative did not disclose to Plaintiff that she would be subject to a $369 transportation fee for the vehicle to be taken to Waverly, New York.

38.   The Wachovia representative did not disclose to Plaintiff that she would be subject to a $10 per day storage fee for the time that the vehicle was being stored at State Line.

39.   The Wachovia representative did not disclose to Plaintiff that she would be subject to a $75 Administrative fee.

40.   The Wachovia representative did not disclose to Plaintiff that she would be subject to a $75 "key" fee.

41.   The Wachovia representative did not disclose to Plaintiff that she would be subject to a $5 "AIMS" fee.

42.   The Wachovia representative did not disclose to Plaintiff that she would be subject to a $60 fee for her to retrieve her personal property that had been in the vehicle at the time of repossession.

43.   At the time that Plaintiff asked Wachovia to identify the exact amount she would have to pay to redeem her vehicle, Wachovia did not know the exact amount necessary for Plaintiff to redeem her vehicle.

44.   Wachovia did not know this amount because its system of dealing with State Line did not result in State Line providing Wachovia with bills for services unless and until State Line sold the repossessed vehicle.

45.   At the time of Plaintiff's call to Wachovia, Wachovia did not have the information available in its possession to know the exact fees that State Line charged those persons who redeemed their vehicles when the vehicle was in the possession of State Line.

46.   An employee or agent of Wachovia informed Plaintiff that the amount necessary for her to redeem the Camry was $9,534.26.

47.   Wachovia did not inform Plaintiff that she would have to pay more than $500 in additional charges before she could redeem her vehicle, not including storage fees.

48.   An employee or agent of Wachovia informed Plaintiff that she would have to make a payment of this amount to Wachovia before she could regain possession of the Camry.

49.   Plaintiff obtained a bank check from Wachovia bank in the amount of $9,534.26 that she sent to Wachovia.

50.   Approximately $350 of the $9,534.26 was to pay a repossession fee that Wachovia paid to DRS.

51.   Wachovia deposited the $9,534.26 bank check received from Plaintiff and applied the

proceeds to Plaintiff's account.

52.    At the time Wachovia deposited the $9,534.26 bank check, it knew or should have known that State Line had already transported Plaintiff's vehicle to Waverly, New York.

53.    Wachovia did not apply the $9,524.26 payment from Plaintiff in the following order: following order: interest, late charges, fees, and then principal.

54.    After receiving Plaintiff's check, Wachovia informed Plaintiff her vehicle was being stored at State Line Auto Auction in Waverly, New York.

55.    Wachovia also informed Plaintiff that she would need to make arrangements to retrieve the vehicle from that location.

56.    State Line had been contracted by Wachovia to perform certain services related to the sale of vehicles that Wachovia repossessed from Plaintiff and other New Jersey residents.

57.    Plaintiff requested that Wachovia make arrangements for the Camry to be transported to her residence or some other closer location.

58.    Wachovia refused this request and told Plaintiff she would have to contact State Line directly to make arrangements to retrieve the Camry.

59.    Plaintiff contacted State Line that informed her vehicle was being stored at 830 Talmadge Hill Road, Waverly, New York.

60.    State Line also told Plaintiff that it would only release the vehicle to her if she paid more than $600 in various fees, including a daily storage fee. This was the first time that Plaintiff had heard that it would be necessary for her to pay an amount in addition to the $9,534.26 paid to Wachovia in order for her to redeem the Camry.

61.    State Line also informed her that it would only accept payment in the form of cash and that she could only reclaim the Camry at certain times of day.

62. Wachovia authorized State Line to not release the Camry to Plaintiff unless she first paid State Line in cash the fees it demanded.

63. Wachovia knew or should have known that State Line would refuse to release Plaintiff's vehicle unless Plaintiff first paid the fees demanded by State Line.

64. Wachovia knew or should have known that State Line would refuse to release Plaintiff's vehicle unless Plaintiff first paid the fees demanded by State Line in cash.

65. Wachovia knew or should have known that State Line would charge Plaintiff fees in excess of its contract with State Line.

66. It was Wachovia's policy that if Plaintiff did not pay State Line the fees it demanded in cash then her vehicle would remain in State Line's possession indefinitely.

67. State Line routinely accepts forms of payment other than cash for services that include towing and storage.

68. Having no other feasible option to reclaim the Camry, Plaintiff travelled from her home in Lawnside, New Jersey to the State Line auction in Waverly, New York.

69. To make this trip, she left home around 6:30 a.m. and took a bus to a New Jersey transit station where she took a New Jersey transit train to New York City's Pennsylvania Station.  From there, she walked to the Port Authority bus terminal where she took a bus to Waverly, New York.  From there, she took a taxi to State Line.

70. An employee or agent of State Line told Plaintiff that she would have to pay $644 before it would release the Camry.

71. Plaintiff paid State Line $644 in cash.

72. An employee or agent of State Line provided Plaintiff with a receipt, a copy of which is attached as **Exhibit C**.

73.     The State Line receipt provides an itemization of the $644 as follows:

    a.   $369 for "Transportation from Sicklerville, NJ";

    b.   $120 for "Storage @ $10.00 per day";

    c.   $75 for "Admin. Fee";

    d.   $75 for "Keys"; and

    e.   an additional $5 charge.

74.     State Line acted as Wachovia's agent in the collection of the fees it collected from Ms. Pollitt.

75.     State Line acted as Wachovia's agent in refusing to release Ms. Pollitt's vehicle to her unless she paid State Line $644.

76.     Plaintiff asked an employee or agent of State Line about her possessions inside the Camry at the time of repossession and was told that her property was in the possession of Defendant DRS in Sicklerville, New Jersey.

77.     Plaintiff then took possession of the Camry from the location of State Line auction.

78.     Plaintiff then drove approximately 233 miles back to her home in Lawnside, New Jersey. She arrived home around 10:30 p.m. at night.

79.     The return trip from Plaintiff's residence to State Line took Plaintiff approximately 16 hours.

80.     The contract in effect between Wachovia and State Line did not permit State Line to charge a fee for storing vehicles at the location of the auction.

81.     The $120 fee that State Line charged to Plaintiff for storage was in excess of the price for vehicle storage set forth in the contract between State Line and Wachovia.

82.     The contract in effect between Wachovia and State Line included a provision that allows

State Line to offer transportation of repossessed vehicles at a cost to be approved and authorized by Wachovia.

83.    The contract between Wachovia and State Line required that no modification would be valid or effective unless it was made in writing by a duly authorized officer of both parties.

84.    The contract between Wachovia and Stateline does not provide for the $369 transportation fee that State Line charged Plaintiff.

85.    There is no writing that indicates that Wachovia approved and authorized the $369 transportation fee that State Line charge Plaintiff.

86.    The contract between Wachovia and Stateline does not provide for the $75 "Keys" fee.

87.    The contract between Wachovia and State Line requires State Line to make records related to work performed and billings available for audit and inspection.

88.    Wachovia did not perform an audit of the records of State Line at any time relevant to the class period alleged herein.

89.    Plaintiff then contacted Defendant DRS and inquired as to the process for the return of her personal property.

90.    An employee or agent of Defendant DRS told Plaintiff that she would have to pay a cash fee of $60 before it would release her property to her.

91.    Plaintiff travelled to the offices of DRS in Sicklerville, New Jersey.

92.    DRS' business records indicate that Plaintiff paid the $60 fee.

93.    An employee or agent demanded Plaintiff pay $60 in cash.

94.    Plaintiff paid the fee and her personal property was returned to her.

95.    DRS did not charge Plaintiff sales tax on the $60 fee.

96. DRS did not remit to the State of New Jersey any portion of the $60 fee collected from Plaintiff.

97. The New Jersey Sales and Use Tax Act imposes sales tax on storage charges for tangible personal property not held for sale.

98. When Plaintiff was at DRS she learned that the amount of the fee that it demands for the return of personal property is related to the identity of the financial institution that ordered the repossession.

99. Defendant DRS performed the repossession services on behalf of Wachovia subject to a contract.

100. The contract between Wachovia and Defendant DRS required that Defendant DRS perform certain services, including removing personal property from repossessed vehicles and storing such property.

101. Wachovia paid approximately $350 to Defendant DRS for services that included repossessing Plaintiff's vehicle, removing her personal property, and storing her personal property.

102. The $350 that Wachovia paid Defendant DRS was paid out of the $9,534.26 that Plaintiff paid Wachovia.

103. Plaintiff was not a party to any contract that required her to pay a fee to reclaim her personal property that was in her vehicle at the time it was repossessed.

104. The contract between Wachovia and DRS required DRS to:

    a. deliver the repossessed vehicle to a location designated by Wachovia;

    b. prepare and deliver to Wachovia a list of the personal property found in each repossessed vehicle;

    c.   provide Wachovia with a description of the items for which it charged fees;

    d.   provide Wachovia with the name, address, date of birth, and social security number of each person assigned to work on its premises;

    e.   provide Wachovia with assurances that DRS' personnel comply with the rules and requirements pertaining to work history and qualifications and personal history;

    f.   disclose to Wachovia the contract's employment rules. Requirements and policies;

    g.   perform all drug testing, background and credit checks, and other procedures required by Wachovia.

105.   The contract between Wachovia and DRS provided that Wachovia would pay DRS $350 for an involuntary repossession and this amount included 30 days of free storage for the vehicle unless the vehicle was redeemed by the owner, in which case a vehicle storage fee of $30 per day would be charged.

106.   The contract between Wachovia and DRS included a provision that no fee would be charged for the storage of personal property if it were collected within 60 days.

107.   The contract between Wachovia and DRS did not allow DRS to charge a $60 fee to consumers who retrieved their personal property.

108.   The contract between Wachovia and DRS required DRS to keep and maintain records of all transactions.

109.   The contract between Wachovia and DRS included a provision that allowed Wachovia to audit DRS' records pertaining to DRS' business with Wachovia.

110.   Wachovia permitted DRS to charge a $60 fee for retrieving personal property from a vehicle that DRS repossessed at the request of Wachovia.

111.   Wachovia knew or should have known that DRS charged a $60 fee for retrieving

personal property from a vehicle that DRS repossessed at the request of Wachovia.

112.   Prior to the filing of Plaintiff's lawsuit in this matter, Wachovia never exercised its right to audit DRS' records.

113.   Wachovia did not perform an audit of DRS' records at any time relevant to the class period alleged herein.

114.   Wachovia's contract with DRS is the same or similar as the contract which it has entered with some or all of the New Jersey repossession agents that have performed repossession services on Wachovia's behalf.

115.   Wachovia did not performed an audit of the records of any repossession agent operating in the State of New Jersey during the period from four years prior to the filing of this lawsuit through the date this lawsuit was filed.

116.   DRS did not provide to Wachovia assurances that DRS' personnel complied with the rules and requirements pertaining to work history and qualifications and personal history.

117.   The New Jersey repossession agents other than DRS whose services were utilized by Wachovia did not provide to Wachovia assurances that their personnel complied with the rules and requirements pertaining to work history and qualifications and personal history.

118.   DRS did not disclose to Wachovia its compliance with the employment rules set forth in the Wachovia between Wachovia and DRS.

119.   The New Jersey repossession agents other than DRS whose services were utilized by Wachovia did not disclose to Wachovia its compliance with the employment rules set forth in their contracts with Wachovia.

120.   DRS did not perform all drug testing, background and credit checks, and other procedures required by Wachovia.

121.   The New Jersey repossession agents other than DRS whose services were utilized by Wachovia did not perform all drug testing, background and credit checks, and other procedures required by Wachovia.

122.   Repossession agents other than DRS that have performed repossessions for Wachovia during the relevant time period have demanded a fee for the retrieval of personal property from vehicles that those agents repossessed at the request of Wachovia.

123.   Wachovia knew or should have known that repossession agents other than DRS that have performed repossessions for Wachovia during the relevant time period have demanded a fee for the retrieval of personal property from vehicles that those agents repossessed at the request of Wachovia.

124.   Wachovia did not receive from DRS a list of the personal property found in Plaintiff's vehicle.

125.   DRS did not prepare a list of personal property found in Plaintiff's vehicle.

126.   Wachovia did not routinely receive from DRS lists of personal property found in the vehicles of the vehicles repossessed by DRS.

127.   Wachovia never received a list of personal property from DRS.

128.   Wachovia's contracts with New Jersey repossession agents other than DRS require the agents to provide to Wachovia lists of the property found in the repossessed vehicles.

129.   Wachovia did not routinely receive from New Jersey repossession agents other than DRS lists of personal property found in the vehicles of the vehicles repossessed by those agents.

130.   Wachovia never received a list of personal property from New Jersey repossession agents other than DRS.

131. Wachovia did not receive from DRS the name, address, date of birth, and social security number of each person assigned to work on its premises.

132. Wachovia has not received from New Jersey repossession agents other than DRS the name, address, date of birth, and social security number of each person assigned to work on its premises.

133. The RISC does not contain a provision that required Plaintiff to pay a fee to reclaim her personal property that was in her vehicle at the time it was repossessed.

134. Defendant DRS only charges a fee to those Wachovia consumers who actually reclaim their personal property. It does not charge the fee to the other customers whose property it stored after removing the property from their vehicles nor does it attempt to collect that fee from Wachovia.

135. Defendant DRS acted as Wachovia's agent in the collection of the $60 fee from Plaintiff.

136. Wachovia and its agents required that Plaintiff pay $10,238.26 to redeem her vehicles and reclaim her personal property. Of that amount, $350 was a fee for the repossession, $644 was a fee for the services of State Line, and $60 was a fee for Defendant DRS to release Plaintiff's personal property for a total of $1,054.

137. The $1,054 charged to Plaintiff for fees related to the repossession did not include any fee for the sale of the vehicle.

138. Plaintiff also had to pay approximately $107.55 to travel from her home to Waverly, New York and to drive the Camry home from that location.

139. There are numerous motor vehicle auctions much closer to Plaintiff's home than the State Line auction in Waverly, New York.

140. After Ms. Pollitt redeemed her vehicle, Wachovia did not amend the security instrument

related to that vehicle that was filed with the New Jersey Motor Vehicle Commission as required upon the termination of the security interest pursuant to N.J.S.A. 39:10-10 (and, by proxy, 12A9:-513).

141. After Ms. Pollitt had fully performed her obligations under the RISC, Wachovia failed to file with the director of the New Jersey Motor Vehicle Commission the requisite notice containing evidence of such performance or termination as required by N.J.S.A. 39:10-10.

142. Plaintiff has suffered damages as a result of Defendants' unlawful actions including but not limited to: the fees that she was compelled to pay State Line; the $60 that she was compelled to pay Defendant DRS to reclaim her personal property; the approximately $107.55 paid by Plaintiff to travel from her home to Waverly, New York and to drive the Camry home from that location; and the diminution of value of Plaintiff's vehicle caused by Wachovia's failure to comply with 12A:9-513(a) in its transactions with Ms. Pollitt and those similarly situated.

143. Wachovia misrepresented the amount necessary to redeem the repossessed vehicles and/or failed to identify the exact amount necessary to redeem the vehicles of more than 50 New Jersey resident persons similarly situated to Plaintiff in a manner similar to the experience of Plaintiff.

144. Wachovia required more than 50 New Jersey resident persons similarly situated to Plaintiff to travel to Waverly, New York as a condition of redeeming their collateral vehicles in a manner similar to the experience of Plaintiff.

145. Wachovia required more than 50 New Jersey resident persons similarly situated to Plaintiff to pay approximately $1,000 in fees as a condition of redeeming their collateral

vehicles in a manner similar to the experience of Plaintiff.

146.   Wachovia charged more than 50 New Jersey resident persons similarly situated to Plaintiff fees in excess of the reasonable expenses of retaking, holding, preparing for disposition, processing, and disposing, of the collateral in a manner similar to the experience of Plaintiff.

147.   Wachovia and Defendant DRS required more than 50 New Jersey resident persons similarly situated to Plaintiff to pay a fee as a condition for the release of their personal property taken from their repossessed vehicles.

### Class Allegations

148.   This action is brought as a class action, pursuant to the Rules of Court.

149.   Ms. Pollitt brings this action on behalf of herself and all others similarly situated. The proposed class is defined as follows:

### Definitions of Two Classes

Plaintiff alleges claims brought on behalf of two Classes of persons similarly situated to herself:

> **Class A:**   All consumer obligors to whom Wachovia provided an inaccurate redemption amount and/or failed to disclose the exact amount necessary to redeem when that information was requested at any time on or after the day four years prior to the filing of the initial Complaint; and/or
>
> **Class B:**   All persons who, at any time since June 25, 2008, were charged and paid a fee to Defendant DRS as a condition of DRS releasing property that had been in their vehicle when it was repossessed by Defendant DRS at the request of Wachovia.

Specifically excluded from the proposed Classes are:

> a.   The officers, directors, employees, and legal representatives of Defendants, as well as their immediate family members;

b. The officers, directors, employees, and legal representatives of any repossession company, motor vehicle auction company, or any other company directly involved in the repossession or disposition of collateral of any Class member; and

c. Any Judge or Magistrate presiding over this action and members of their immediate families.

150. The Classes for whose benefit this action is brought are so numerous that joinder of all members is impracticable. The precise size of the proposed classes and the identity of its members will be readily ascertainable from Defendants' business records.

151. Ms. Pollitt will fairly and adequately protect the interests of the Classes, and has retained competent counsel experienced in the prosecution of consumer class actions.

152. The claims and defenses of Ms. Pollitt are typical of the claims and defenses of the members of the Classes.

153. There are questions of law and fact common to Classes.

154. The common questions include but are not limited to:

a. Whether Wachovia misrepresented the amount necessary for Plaintiff and those similarly situated necessary to redeem their collateral motor vehicles, and, if so, whether this practice violated the NJUCC, TCCWNA, and/or the CFA;

b. Whether Wachovia failed to provide to Plaintiff and those similarly situated the exact amount necessary to redeem their repossessed vehicles when Plaintiff and those similarly situated contacted Wachovia requesting the amount necessary to redeem;

c. Whether Wachovia's practice of requiring its customers to travel to Waverly, New York and pay approximately $1,000 to redeem their repossessed motor vehicle and personal property violates the NJUCC and/or the CFA;

d. Whether Wachovia knew or should have known that its vendors were charging Wachovia amounts in excess of the prices set forth in Wachovia's contracts with those customers;

e. Whether Wachovia required Plaintiff and those similarly situated to pay fees to an automobile auction as a condition of it releasing their repossessed collateral motor vehicle after paying Wachovia the redemption amount and, if so, whether this practice violated the NJUCC, TCCWNA, and/or the CFA;

    f.    Whether Wachovia's retail installment sales form misrepresents the clearly established rights of New Jersey consumers;

    g.    Whether Wachovia failed to file a termination statement as required by 12A:9-513(a) in its transactions with Ms. Pollitt and those similarly situated;

    h.    Whether State Line's charging Plaintiff and those similarly a storage fee constitutes a violation of the New Jersey Consumer Fraud Act;

    i.    Whether Defendants' practice of charging a fee as a condition of releasing the personal property taken from a repossessed vehicle is a violation of the NJUCC and/or the CFA; and

    j.    Whether the retail installment sales purchased by Wachovia violates TCCWNA.

155.    Proof of a common set of facts will establish liability and the right of each Class member to recover.

156.    While the economic damages suffered by the individual Class members are significant, the amount may be modest compared to the expense and burden of individual litigation.

157.    A class action will cause an orderly and expeditious administration of the claims of the Classes and will foster economies of time, effort, and expense.

158.    Ms. Pollitt does not have interests antagonistic to those of the Classes.

159.    The Classes are ascertainable.

160.    The prosecution of separate actions by individual members of the Classes would run the risk of:

    a.    inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class;

    b.    adjudications with respect to individual members of the Classes that, as a practical matter, would be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

161.  Wachovia has acted or refused to act on grounds generally applicable to Ms. Pollitt and all Class members, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Classes as a whole.

162.  A class action will cause an orderly and expeditious administration of the Classes and will foster economies of time, effort, and expense.

163.  The questions of law or fact common to the members of the Classes predominate over any questions affecting only individual Class members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

164.  Ms. Pollitt does not anticipate any difficulty in the management of this litigation.

### COUNT ONE
### Violations of the NJUCC

165.  Ms. Pollitt repeats and realleges all prior allegations as if set forth at length herein.

166.  Ms. Pollitt and those members of Class A are consumer obligors under N.J.S.A. 12A:9-102(a)(25).

167.  The disposition of the vehicle of Ms. Pollitt and those members of Class A was not commercially reasonable in every aspect in violation of N.J.S.A. 12A:9-623.

168.  Wachovia violated N.J.S.A. 12A:9-614 in its transactions with Ms. Pollitt and those members of Class A.

169.  By misrepresenting the amount necessary to redeem the collateral vehicles repossessed by Wachovia from Ms. Pollitt and those members of Class A, Wachovia violated the NJUCC.

170.  By failing to ensure the release of Ms. Pollitt's vehicle and the vehicles of those similarly situated after they paid to Wachovia the amount demanded, Wachovia violated the NJUCC.

171.   By failing to provide Ms. Pollitt and those similarly situated with the exact amount necessary to redeem their vehicles when asked, Wachovia violated the NJUCC.

172.   By failing to provide Plaintiff and those similarly situated with the time of a private sale, Wachovia violated the NJUCC.

173.   By requiring that Ms. Pollitt and members of Class A travel to Waverly, New York to as a condition of redeeming their collateral vehicles, Wachovia violated N.J.S.A. 2A:9-623.

174.   By requiring that Ms. Pollitt and members of Class A pay approximately $1,000 in fees as a condition of redeeming their collateral vehicles, Wachovia violated N.J.S.A. 2A:9-623.

175.   By requiring Ms. Pollitt and members of Class A pay fees in excess of the reasonable expenses of retaking, holding, preparing for disposition, processing, and disposing, of collateral, Wachovia violated the NJUCC.

176.   By requiring that Ms. Pollitt and members of Class A pay fees in cash to an auto auction as a condition of redeeming collateral, Wachovia violated N.J.S.A. 2A:9-623.

177.   Wachovia violated the NJUCC rights of Ms. Pollitt and members of Class A.

178.   Wachovia breached its duty of "good faith" owed to Ms. Pollitt and members of Class A as required by the UCC.

179.   Wachovia's failure to comply with N.J.S.A.12A:9-614 constituted a breach of its duty of "good faith" which includes both "honesty in fact" and "the observance of reasonable commercial standards of fair dealing" required by N.J.S.A. 12A:9-102(a)(43).

180.   Wachovia violated N.J.S.A. 12A:9-625(e)(4) by failing to cause the secured party of record to file or send a termination statement as required by 12A:9-513(a) in its transactions with Ms. Pollitt and those similarly situated.

## COUNT TWO
### Violations of the Consumer Fraud Act

181.   Ms. Pollitt repeats and realleges all prior allegations as if set forth at length herein.

182.   Wachovia has engaged in unconscionable commercial practices, deception, fraud, false promises, false pretences and/or misrepresentations, as specified above, in its interactions with Ms. Pollitt and those members of Class A and/or Class B in violation of the New Jersey Consumer Fraud Act (N.J.S.A. 56:8-1 et. seq.).

183.   Each of the above mentioned NJUCC violations of Wachovia constitute deceptive and unconscionable business practices in violation of the CFA.

184.   By misrepresenting the amount necessary to redeem the collateral vehicles repossessed by Wachovia from Ms. Pollitt and those members of Class A, Wachovia committed an unconscionable business practice, a misrepresentation, and a deceptive act in violation of the CFA.

185.   By requiring that Ms. Pollitt and members of Class A travel to Waverly, New York to as a condition of redeeming their collateral vehicles, Wachovia committed an unconscionable business practice, a misrepresentation, and a deceptive act in violation of the CFA.

186.   By requiring that Ms. Pollitt and members of Class A pay approximately $1,000 in fees as a condition of redeeming their collateral vehicles, Wachovia committed an unconscionable business practice, a misrepresentation, and a deceptive act in violation of the CFA.

187.   The fees charged to Ms. Pollitt and members of Class A were in excess of the reasonable expenses of retaking, holding, preparing for disposition, processing, and disposing, of the collateral.  By requiring that Ms. Pollitt and members of Class A as a condition of

redeeming collateral, Wachovia committed an unconscionable business practice, a misrepresentation, and a deceptive act in violation of the CFA.

188.  Ms. Pollitt and those Members of Class B had an absolute and unconditional right to the return of personal property contained in their repossessed vehicles.

189.  The personal possessions contained in the vehicles of Ms. Pollitt and those Members of Class B were not subject to any security interest.

190.  The personal property contained in the vehicles of Ms. Pollitt and those Members of Class B could not be lawfully taken and held by Defendants State Line and Wachovia pursuant to self-help repossession.

191.  Defendants DRS and Wachovia were constructive bailees of the personal property contained in the vehicles of Ms. Pollitt and those Members of Class B, and were therefore required to surrender such property.

192.  There is no basis in the law for the charge of a fee as a condition for the release of the personal property of Ms. Pollitt and those Members of Class B.

193.  There is no basis in the law the assertion of any lien against the personal property of Ms. Pollitt and those Members of Class B.

194.  Defendants Wachovia and DRS violated the CFA by:

a.  Charging Ms. Pollitt and those Members of Class B a fee that they must be paid as a condition for the release of their personal property.

b.  Imposing an unlawful lien against the personal property of Plaintiff and those similarly situated.

c.  Conditioning the release of the personal property of Ms. Pollitt and those Members of Class B on payment of improper and unowed "storage", "handling", and/or "administration" fees.

195.  State Line has engaged in unconscionable commercial practices, deception, fraud, false promises, false pretenses and/or misrepresentations, as specified above, in its interactions

with Ms. Pollitt and those members of Class A in violation of the New Jersey Consumer Fraud Act (N.J.S.A. 56:8-1 et. seq.).

196. State Line committed an unconscionable business practice, a misrepresentation, and/or a deceptive act in violation of the CFA by charging Ms. Pollitt and those similarly situated fees as a condition for the release of their motor vehicles.

197. State Line committed an unconscionable business practice, a misrepresentation, and/or a deceptive act in violation of the CFA by charging Ms. Pollitt and those similarly situated fees not permitted by the contract between State Line and Wachovia.

198. DRS committed an unconscionable business practice, a misrepresentation, and/or a deceptive act in violation of the CFA by charging Ms. Pollitt and those similarly situated fees not permitted by the contract between Wachovia and DRS..

199. Wachovia committed an unconscionable business practice, a misrepresentation, and/or a deceptive act in violation of the CFA by authorizing State Line to hold indefinitely the collateral vehicles of Ms. Pollitt and those similarly situated unless and until they paid the fees charged by State Line.

200. Wachovia committed an unconscionable business practice, a misrepresentation, and/or a deceptive act in violation of the CFA by allowing its vendors to charge Ms. Pollitt and those similarly situated fees not permitted by the contracts with those vendors.

201. Wachovia committed an unconscionable business practice, a misrepresentation, and/or a deceptive act in violation of the CFA by not monitoring the practices of its vendors.

202. Wachovia committed an unconscionable business practice, a misrepresentation, and/or a deceptive act in violation of the CFA by failing to comply with 12A:9-513(a) in its transactions with Ms. Pollitt and those similarly situated.

203.   Ms. Pollitt and those members of Class A and/or Class B were damaged and suffered an ascertainable loss as a result of the above violations of the CFA.

### COUNT THREE
**Violations of the Truth-in-Consumer Contract, Warranty, and Notice Act**

204.   Ms. Pollitt repeats and realleges all prior allegations as if set forth at length herein.

205.   The Truth-in-Consumer Contract, Warranty and Notice Act, N.J.S.A. 56:12-14 et seq. (hereinafter "TCCWNA") prohibits businesses from using contracts or notices in transactions with consumers that contain provisions that violate the consumers' rights or the business's responsibilities under New Jersey or federal law.

206.   The Wachovia retail installment form contract used in the transaction with Plaintiff (Exhibit A) and with other putative class members are consumer contracts subject to TCCWNA.

207.   The Wachovia retail installment form contract contains provisions that violate the purchaser's rights and Wachovia's responsibilities under New Jersey law.

208.   The following Wachovia retail installment form contract's provision violates the rights of Plaintiff and those similarly situated as well as Wachovia's responsibilities under New Jersey law: "You authorize us to peacefully enter any premises where the Goods may be in order to take possession of the Goods in order to take possession of the Goods and remove them."

209.   Plaintiff and those similarly situated cannot provide a blanket authorization for Wachovia to enter any premises to take back her vehicle.

210.   The following Wachovia retail installment form contract's provision violates the rights of Plaintiff and those similarly situated as well as Wachovia's responsibilities under New Jersey law: "The law gives us a right of set-off in any of your property in our

possession...If you default, the Assignee may exercise the right to set-off and apply any of your property in the Assignee's possession, including deposit accounts, to sums you owe on this Contract."

211.   The personal property in the collateral vehicles of Plaintiff and those similarly situated is in the possession of Wachovia at the time of repossession and for some period of time after the repossession.  According to the Wachovia retail installment form contract, such property could be subject to Wachovia's right to set off merely because it was in the possession of Wachovia.  The NJUCC forbids a creditor from the right to set off on personal property left behind in a collateral motor vehicle.

212.   The provision in the Wachovia retail installment form contract that permits Wachovia to keep unsecured personal property found in a repossessed vehicle and only return the property to the rightful owner "if you [the purchaser] ask in a letter sent to us by certified mail within a reasonable time" violates Wachovia's responsibilities under N.J.S.A. 46:30C-3, which imposes an unconditional, affirmative duty on Wachovia to "make reasonable efforts to return the property to its owner" under such circumstances.

213.   The provision in the Wachovia retail installment form contract that permits Wachovia to keep unsecured personal property found in a repossessed vehicle and only return the property to the rightful owner "if you [the purchaser] ask in a letter sent to us by certified mail within a reasonable time" violates the consumer's right to title and possession of their unsecured personal property as established by New Jersey property law and the New Jersey constitution.

214.   The provision in the Wachovia retail installment form contract that states that Wachovia would return unsecured personal property found in a repossessed vehicle "if you ask" is a

false promise and misrepresentation in violation of the CFA at N.J.S.A. 56:8-2, because

Wachovia's practice has not been to hold consumers' personal property and "return it to

[them]" on request.  Instead, Wachovia has delegated the bailment of consumers' personal

property to its various third-party repossession agents, and has required consumers to

*retrieve* the property by personally traveling to the third-party agents' impound yards and

satisfying further conditions imposed by the repossession agent and/or Wachovia.

215.   Therefore, Wachovia violated TCCWNA at N.J.S.A. 56:12-15 against Plaintiff and all

other putative class members and is liable to them for statutory damages and other relief

as set forth at N.J.S.A. 56:12-17.

WHEREFORE, Ms. Pollitt, on behalf of herself and those similarly situated, respectfully

prays for relief as follows:

a.   For an order certifying this matter as a class action providing notice to the
members of the Classes, and appointing Ms. Pollitt as the class representative and
her attorneys as Class Counsel;

b.   For a declaratory judgment that Defendants violated the Consumer Fraud Act,
N.J.S.A. 56:8-1 et seq., the Truth-in-Consumer Contract, Warranty and Notice
Act, N.J.S.A. 56:12-14 et seq., and the New Jersey Uniform Commercial Code,
N.J.S.A. 12A: 9-102 et seq.;

c.   For injunctive relief prohibiting Defendants from carrying out future violations of
the NJUCC, CFA, and TCCWNA similar to the violations alleged herein and
compelling Wachovia to comply with 12A:9-513(a) in its transactions with Ms.
Pollitt and those similarly situated.

d.   For an order of restitution in an amount to be determined at trial to restore to all
affected obligors all money acquired by Defendants or its successors in interest by
means of its unlawful, unfair, and fraudulent practices and all interest and profit
earned thereon;

e.   For actual damages;

f.   For compensatory damages;

g.   For treble damages pursuant to N.J.S.A. 56:8-19;

h.   For maximum statutory damages pursuant to the New Jersey Consumer Fraud
     Act, N.J.S.A. 56:8-1 et. seq., the Truth-in-Consumer Contract, Warranty and
     Notice Act, N.J.S.A. 56:12-14 et. seq., the New Jersey Uniform Commercial
     Code, N.J.S.A. 12A:9 102 et seq., and all other applicable statutes;

i.   For reasonable attorney's fees and costs of suit in connection with this action
     pursuant to N.J.S.A. 56:8-19, N.J.S.A. 56:12-17, and all other applicable statutes;

j.   For nominal damages;

k.   For consequential damages;

l.   For pre-judgment and post-judgment interest; and

m.   For such other and further relief as the Court deems equitable and just.

## NOTICE TO ATTORNEY GENERAL OF ACTION

A copy of this complaint will be mailed to the Attorney General of the State of New
Jersey within ten days after the filing with the Court, pursuant to N.J.S.A. 56:8-20.

## DESIGNATION OF TRIAL COUNSEL

Andrew Wolf is designated as trial counsel for Ms. Pollitt.

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

I hereby certify pursuant to Local Civil Rule 11.2 that the matter in controversy is not, to

the best of my knowledge, information, and belief, the subject of any other action pending in any

Court or of any pending arbitration or administrative proceeding. I know of no party who should

be joined in the action at this time. I certify that the foregoing statements made by me are true.

/s Christopher J. McGinn, Esq.
Attorney for Ms. Pollitt and those similarly situated
The Law Office of Christopher J. McGinn
P.O. Box 365
79 Paterson St.
New Brunswick, NJ  08901
(732) 937-9400 - tel
(800) 931-2408 - fax
cjmcginn@njconsumerprotection.com

Dated:  October 13, 2010