NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| Shanee N. POLLITT,<br><br>    Plaintiff,<br><br>    v.<br><br>DRS TOWING, LLC, d/b/a ADVANCED FINANCIAL SERVICES; WACHOVIA DEALER SERVICES, INC., d/b/a WDS, INC.; WFS FINANCIAL, INC., STATE LINE AUTO AUCTION, INC.; and JOHN DOES 1 to 10,<br><br>    Defendants. | Civil No. 10-1285 (AET)<br><br>**OPINION & ORDER** |

THOMPSON, U.S.D.J.

I.   INTRODUCTION

This matter has come before the Court upon Defendant State Line Auto Auction, Inc.'s Rule 12(b)(6) Motion to Dismiss [docket # 34]; Defendant Wachovia Dealer Services, Inc.'s Rule 12(c) Motion for Judgment on the Pleadings with respect to Plaintiff's Consumer Fraud Act claims [39]; and Defendant Wachovia Dealer Services, Inc.'s Rule 12(c) Motion for Judgment on the Pleadings with respect to Plaintiff's N.J.S.A. 12A:9-513 claim [44]. Plaintiff has opposed these respective motions [37, 46, 49]. The Court has decided the motions upon the submissions of the parties and without oral argument, pursuant to Fed. R. Civ. P. 78(b). For the reasons stated below, the motions to dismiss the Consumer Fraud Act claims are denied, and the motion for judgment on the pleadings as to the N.J.S.A. 12A:9-513 claim is granted.

II. BACKGROUND

This action arises out of expenses charged to Plaintiff and other similarly situated

-1-

individuals as a result of the repossession of their vehicles.  Plaintiff entered into a retail installment sales contract (RISC) with the Toyota of Runnemede dealership in order to finance her purchase of a 2002 Toyota Camry.  (Am. Compl. ¶ 15) [26].  The dealership assigned the RISC to Wachovia.  (*Id.*)  Under the RISC, the creditor can require the debtor to pay "actual necessary and reasonable costs of retaking and storing the Goods which are authorized by law." (*Id.* at ¶ 16.)  Moreover, the creditor may "take any other things founds [sic] in the Goods but will return these things to you if you ask," and, if the vehicle is going to be sold, the creditor must give "10 days reasonable notice of the time and, if a public sale, also the place of sale." (*Id.*)  On September 10, 2009, Defendant DRS Towing, LLC ("DRS"), allegedly acting as Wachovia's agent, took possession of and towed Plaintiff's car to its facilities in Sicklerville, New Jersey, where DRS removed Plaintiff's personal possessions.[1]  (*Id.* at ¶¶ 25, 27.)  The following day, Wachovia sent a Notice to Plaintiff stating its intent to sell the vehicle and indicating that she could redeem the vehicle by paying off the full amount owed.  (*Id.* at ¶¶ 31, 32.)  In response to Plaintiff's telephonic inquiry regarding the payment amount, a Wachovia representative informed Plaintiff that she would have to pay $9,534.26[2] to redeem the vehicle, but failed to disclose various additional fees.  (*Id.* at ¶¶ 34–42.)  After receiving Plaintiff's $9,534.26 check, Wachovia informed Plaintiff that her vehicle was being stored at Defendant State Line Auto Auction, Inc.'s ("State Line") facility in Waverly, New York.  (*Id.* at ¶ 54.)  Plaintiff subsequently learned, upon contacting State Line, that she would have to pay State Line an additional $644 in cash[3] in order to redeem the vehicle.  (*Id.* at ¶¶ 59–61, 70–72.)  Plaintiff was subjected to these additional charges because State Line allegedly does not bill Wachovia for services unless and until State Line sells the repossessed vehicle.  (*See id.* at ¶ 44.)  Plaintiff also incurred travel costs of $107.55

---

[1] Plaintiff ultimately had to pay DRS a $60 fee in cash in order to get her personal property back.  (Am. Compl. ¶¶ 90–94.)
[2] Of this sum, $350 allegedly went to DRS for its towing services (Am. Compl. ¶¶ 101–103.)
[3] The receipt that State Line gave Plaintiff itemizes the $644 as follows: $369 for transportation from Sicklerville, NJ, $120 for storage costs of $10 per day, a $75 admin fee, $75 for keys, and an additional $5 charge.  (Am. Compl. ¶ 73.)

-2-

to travel from her home in Lawnside, New Jersey to Waverly, New York and back.  (*Id.* at ¶ 138.)

Plaintiff initially filed a complaint against Wachovia, DRS, and State Line in New Jersey Superior Court on behalf of herself and a class of other similarly situated individuals.  On March 10, 2010, Wachovia removed the case based on original jurisdiction under 28 U.S.C. § 1332(d)(2)(A) over class actions for which the amount in controversy exceeds $5,000,000 and a member of the class is a citizen of a state different from any defendant.  (Notice of Removal ¶ 3) [2].  Plaintiff claims in her Amended Complaint that the Defendants violated New Jersey Uniform Commercial Code ("NJUCC") sections N.J.S.A. 12A:9-623, 12A:9-614, 12A:9-102(a)(43), 12A:9-625(e)(4), and 12A:9-513(a); the Consumer Fraud Act ("CFA"), N.J.S.A. 56:8-1, *et seq.*; and the Truth-in-Consumer Contract, Warranty and Notice Act ("TCCWNA"), N.J.S.A 56:12-14, *et seq.* (Am. Compl. ¶ 165–180, 181–203, 204–215.)  On December 23, 2010, State Line moved to dismiss the CFA claim against it [34].   Wachovia then filed a cross-motion for judgment on the pleadings as to Plaintiff's CFA claim on January 24, 2011 [38].  Wachovia has also moved for judgment on the pleadings as to Plaintiff's N.J.S.A. 12A:9-513 claim on February 11 [44].

### III. ANALYSIS

#### A.   Legal Standard for Rule 12(b)(6) Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), the defendant bears the burden of showing that no claim has been presented.  *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).  A district court must accept as true all of a plaintiff's factual allegations, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.  *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).  To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim that is facially plausible.  *Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009) (citing *Ashcroft v. Iqbal*, --- U.S. ---, 129 S.Ct.

1937, 1949 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  Facial plausibility exists where the facts pled allow the court reasonably to infer that "the defendant is liable for the misconduct alleged."  *Id.* (quoting *Iqbal*, 129 S. Ct. at 1949).  Facts suggesting the "mere possibility of misconduct" fail to show that the plaintiff is entitled to relief.  *Id.* (quoting *Iqbal*, 129 S. Ct. at 1950).

### B.  Legal Standard for Rule 12(c) Motion for Judgment on the Pleadings

Under Federal Rule of Civil Procedure 12(c), a court will grant judgment on the pleadings if, on the basis of the pleadings, no material issue of fact remains and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 12(c); *DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 259 (3d Cir. 2008).  The standard governing a Rule 12(c) motion is the same as the one governing motions to dismiss under Rule 12(b)(6).  *Spruill v. Gillis*, 372 F.3d 218, 223 n.2 (3d Cir. 2004).  The Court must accept the nonmoving party's well-pleaded factual allegations as true and construe those allegations in the light most favorable to the nonmoving party, but the Court will disregard any unsupported conclusory statements.[4]  *DiCarlo*, at 262–63.

### C.  The Consumer Fraud Act ("CFA")

New Jersey's Consumer Fraud Act ("CFA" or the "Act") states that it is unlawful for any person to use or employ

> any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing[] concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby . . . .

N.J.S.A 56:8-2.  The Act defines "sale" to include "any sale, rental or distribution, offer for sale, rental or distribution[,] or attempt directly or indirectly to sell, rent or distribute[.]"  *Id.* 56:8-1(e).

---

[4] In this case, Defendant Wachovia is the moving party, so the Court accepts as true all well-pleaded factual allegations in Plaintiff's Complaint.

It defines "merchandise" as "any objects, wares, goods, commodities, services or anything offered, directly or indirectly to the public for sale[.]" N.J.S.A. 56:8-1(c). And it defines a "person" as "any natural person or his legal representative, partnership, corporation, company, trust, business entity or association, and any agent, employee, salesman, partner, officer, director, member, stockholder, associate, trustee or *cestuis que trustent* thereof[.]" N.J.S.A 56:8-1(d).

To state a CFA claim, a plaintiff must show "(1) unlawful conduct by defendant; (2) an ascertainable loss by plaintiff; and (3) a causal relationship between the unlawful conduct and the ascertainable loss." *Bonnieview Homeowners Ass'n v. Woodmont Builders*, 655 F. Supp. 2d 473, 503 (D.N.J. 2010) (quoting *Bosland v. Warnock Dodge, Inc.*, 964 A.2d 741, 749 (N.J. 2009)). The CFA is considered "remedial legislation," and courts therefore construe its prohibitions "liberally to accomplish its broad purpose of safeguarding the public." *Lee v. Carter-Reed Co., L.L.C.*, 4 A.3d 561, 577 (N.J. 2010) (citing *Furst v. Einstein Moomjy, Inc.*, 860 A.2d 435, 441 (N.J. 2004)). This broad construction is necessary because "the CFA could not possibly enumerate all, or even most, of the areas and practices that it covers without severely retarding its broad remedial power to root out fraud . . . ." *Lemelledo v. Beneficial Mgmt.*, 696 A.2d 546, 551 (N.J. 1997). Nevertheless, a court must "abide by the [Act's] definitions that control the boundaries of the Act's reach." *Lee v. First Union Nat'l Bank*, 971 A.2d 1054, 1059 (N.J. 2009).

### 1. State Line's Motion to Dismiss Plaintiff's CFA Claim

State Line argues that Plaintiff's CFA claim must be dismissed because State Line did not sell the Plaintiff any merchandise or engage in any conduct in connection with the sale of merchandise as required by the CFA. (State Line's Br. in Supp. 8) [34]. Rather, it merely charged fees to recoup "costs it incurred in performing its separate and unrelated contract with Wachovia to hold and auction repossessed vehicles." (*Id.*) State Line further asserts that, even if it was a purveyor of transportation and storage services, these services were not "merchandise" because they were not offered to the public and instead were charged only to those individuals whose

RISC was assigned to Wachovia.  (*Id.* at 9.)  Plaintiff responds that the CFA covers conduct "in connection with" the sale of merchandise as well as in the course of "subsequent performance," and that State Line's conduct constituted subsequent performance of the RISC.  (Pl.'s Br. in Opp'n to State Line's Mot. to Dismiss 9.)

The New Jersey Supreme Court has concluded that the CFA "appl[ies] to the offering, sale, or provision of consumer credit" and also "encompass[es] the sale of insurance policies as goods and services that are marketed to consumers."  *Lemelledo*, 696 A.2d at 551 (citations omitted).  However, it has not addressed the CFA liability of parties that are distinct from the original seller of credit, so we look to Appellate Division cases for guidance on how the New Jersey Supreme Court might decide the case before us. *See Jaworowski v. Ciasulli*, 490 F.3d 331, 333 (3d Cir. 2007) ("When a state's highest court has yet to speak on a particular issue, it becomes the role of the federal court to predict how the state's highest court would decide the issue were it confronted with the problem.") (citation and quotation marks omitted)).

In *Jefferson Loan Company, Inc. v. Session*, the Appellate Division held that "an assignee of a RISC may be liable under the CFA for its own unconscionable commercial practices and activities related to its repossession and collection practices in connection with the subsequent performance of a RISC[.]"  938 A.2d 169, 181 (N.J. Super. Ct. App. Div. 2008) (reversing and remanding trial court's dismissal of CFA claim against assignee of pre-default loan).[5]  The Appellate Division further expanded the CFA's scope in *Gonzalez v. Wilshire Credit Corp.*, a case arising out of a mortgage transaction between two homeowners—Diaz and Gonzalez—and a commercial lender.  988 A.2d 567, 574 (N.J. Super. Ct. App. Div. 2010).  Diaz and Gonzalez

---

[5]  The Appellate Division subsequently held in *Hoffman v. Encore Capital Group, Inc.*, that the CFA does not apply to third-party purchasers of debt already in default.  No. A-3008-07T1, 2008 WL 5245306, at *3 (N.J. Super. Ct. App. Div. Dec. 18, 2008) (unpublished).  Given that *Hoffman* is non-precedential, we are not required to adopt its reasoning.  *Hoffman* is also not analogous to this case because State Line never purchased Plaintiff's debt obligation from Wachovia.  Moreover, the *Hoffman* court's analysis is not particularly helpful, given its failure to address *Jefferson Loan*, or otherwise to explain why purchasers of defaulted debt should be treated differently from purchasers of pre-default debt such as the assignee in *Jefferson Loan*.

executed a mortgage in favor of the lender, but only Diaz signed the note securing the debt obligation. The original lender assigned the mortgage to another lender who appointed defendant Wilshire Credit Corporation ("Wilshire") as its servicing agent on the loan. *Id.* at 568. After Diaz died intestate and Gonzalez defaulted on the loan, Wilshire initiated foreclosure proceedings against Gonzalez and the parties subsequently entered into a stipulated payment agreement to cure default. *Id*. at 569. Upon obtaining counsel, Gonzalez sued Wilshire under the CFA for, among other things, improperly calculating arrears to include fees, costs, and charges prohibited by law. *Id.* at 570. The Appellate Division held that Gonzalez's CFA claim could proceed despite the fact that "the transactions at issue in this case did not directly involve the original mortgage loan but, instead, agreements to cure default between a mortgagor who was not a party to that loan and the assignee and servicer of that loan." *Id.* at 574. In reaching this result, the court noted the New Jersey Supreme Court's broad view of the CFA in *Lemelledo*, but did not elaborate upon the nature of Wilshire's role as a servicer on the loan and instead merely noted that "privity is not a condition precedent to recovery under the CFA." *Id.* at 575 n.9 (citing *Neverovski v. Blair*, 358 A.2d 473, 479 (N.J. Super. Ct. App. Div. 1976)).

Here, Plaintiff has not alleged that State Line is an assignee of the RISC, so *Jefferson Loan* is not directly applicable. However, we also do not credit Defendant's assertion that State Line was a mere debt collector and therefore not a seller of merchandise under the CFA. (*See* State Line's Br. in Supp. 7–8 (citing *Boyko v. Am. Int'l Grp., Inc.* 2009 WL 5194431, at *4 (D.N.J. Dec. 23, 2009) ("[M]ere debt collection efforts on behalf of a third party who might have sold merchandise is not itself a sale of merchandise.")). State Line was not a debt collector in the literal sense: it did not demand payment of the loan amount owed to Wachovia; rather, it charged Plaintiff for transportation and storage services it incurred in performing its contract with Wachovia. In this respect, we consider State Line's position sufficiently analogous to that of defendant Wilshire in *Gonzalez*. Just as Wilshire sought payment of fees and costs from the

foreclosure action, State Line sought payment for its transportation and storage costs arising out of the repossession of Plaintiff's automobile. In light of Appellate Division case law and "clear legislative intent that [the CFA] be applied broadly in order to accomplish its remedial purpose," *Lemelledo*, 696 A.2d at 551, we conclude that a CFA claim may be brought against a party who demands payment for services in connection with the subsequent performance of a loan, even if that party is not the assignee of the loan.

      Having addressed the CFA's scope, we note here that Plaintiff's Amended Complaint adequately alleges a CFA claim against State Line. Plaintiff alleges that State Line violated the CFA by "charging Plaintiff and those similarly [situated] a storage fee." (Am. Compl. ¶ 154(h).) Plaintiff also alleges that State Line committed "an unconscionable business practice, a misrepresentation, and/or a deceptive act in violation of the CFA by charging [Plaintiff] and other class members fees as a condition for the release of their motor vehicles" and "fees not permitted by the contract between State Line and Wachovia." (*Id.* at ¶¶ 196–97.) Furthermore, Plaintiff alleges that "State Line acted as Wachovia's agent in the collection of the fees" and also "acted as Wachovia's agent in refusing to release [Plaintiff's] vehicle to her unless she paid State Line $644." (*Id.* at ¶¶ 74, 75.) Finally, Plaintiff alleges that she and other class members were "damaged and suffered an ascertainable loss as a result of the above violations of the CFA." (*Id.* at ¶ 203.) Taken together, these allegations state a claim for CFA liability: the RISC sold to Plaintiff is a form of credit and thus constitutes a "sale of merchandise" under the Act; State Line's collection of fees as Wachovia's agent[6] constitutes "subsequent performance" relating to the RISC; and State Line's fee-collection is alleged to be an unconscionable business practice that caused Plaintiff to suffer an ascertainable loss—namely, the $644 she had to pay to redeem her vehicle.

---

[6] State Line disputes that it is Wachovia's agent. However, our inquiry on a motion to dismiss is confined to the face of the complaint, and such arguments are better left to the summary judgment stage.

-8-

Thus, State Line's motion to dismiss is denied.

### 2. Wachovia's Motion for Judgment on the Pleadings as to Plaintiff's CFA Claim

As discussed above, the Appellate Division held in *Jefferson Loan* that an assignee of a RISC may be liable under the CFA for its repossession and collection practices in the subsequent performance of the RISC. 938 A.2d at 181. Here, Wachovia was assigned the RISC by the Toyota of Runnemede dealership, and it engaged in repossession and collection practices in the subsequent performance of that RISC. Thus, as an assignee, Wachovia would be subject to the CFA to the extent that any of its practices constituted an unlawful act under the CFA. The question, then, is whether the Plaintiff has sufficiently alleged that Wachovia committed CFA violations. We find that she has.

Plaintiff alleges that Wachovia committed an "unconscionable business practice, a misrepresentation, and a deceptive act in violation of the CFA" in the following ways: (1) "[b]y misrepresenting the amount necessary to redeem the collateral vehicles repossessed by Wachovia[;]" (2) "[b]y requiring that Ms. Pollitt and members of Class A travel to Waverly, New York as a condition of redeeming their collateral vehicles[;]" (3) [b]y requiring that Ms. Pollitt and members of Class A pay approximately $1,000 in fees as a condition of redeeming their collateral vehicles[;]" (4) by charging fees "in excess of the reasonable expenses of retaking, holding, preparing for disposition, processing, and disposing[] of the collateral[;]" (5) by charging Plaintiff and members of Class B a fee "as a condition for the release of their personal property[;]" (6) "by authorizing State Line to hold indefinitely the collateral vehicles of [Plaintiff] and those similarly situated unless and until they paid the fees charged by State Line[;]" (7) "by allowing its vendors to charge Ms. Pollitt and those similarly situated fees not permitted by the contracts with those vendors[;]" (8) "by not monitoring the practices of its vendors[;]" and (9) by failing to file a termination statement as required by N.J.S.A. 12A:9-513(a). (Am. Compl. ¶¶

184–187, 194, 199–202.)

To the extent Plaintiff alleges that Wachovia misrepresented the amount she would have to pay to redeem her automobile, this allegation would need to satisfy Fed. R. Civ. P. 9(b)'s heightened pleading standards. *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); *Smajlaj v. Campbell Soup Co.*, 2011 WL 1086764, at *8 (D.N.J. Mar. 23, 2011) (stating that Rule 9(b) applies to CFA claims (citing *F.D.I.C. v. Bathgate*, 27 F.3d 850, 867–77 (3d Cir. 1994))). An affirmative misrepresentation under the CFA must be "'one which is material to the transaction and which is a statement of fact, found to be false, made to induce the buyer to make the purchase.'" *Wendling v. Pfizer, Inc.*, 2008 WL 833549, at *3 (N.J. Super. Ct. App. Div. Mar. 31, 2008) (quoting *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 365 (N.J. 1997)).

Here, Plaintiff alleges that "[a]n employee or agent of Wachovia informed Plaintiff that the amount necessary for her to redeem the car was $9,534.26." (Am. Compl. ¶ 46.) Plaintiff further alleges that State Line, acting as Wachovia's agent, later refused to release Plaintiff's vehicle unless she paid $644. (Am. Compl. ¶ 75.) These allegations would satisfy Rule 9(b)'s particularity requirement. However, Plaintiff has failed to allege that any misrepresentation regarding the redemption amount induced her to finance her vehicle with Wachovia. This is because the alleged misrepresentations took place after Plaintiff had already entered into the RISC and therefore could not have affected Plaintiff's initial decision to obtain financing. Thus, Plaintiff cannot base her CFA claim against Wachovia on a misrepresentation theory.

Nonetheless, Plaintiff's CFA claim may proceed based on her allegation that Wachovia engaged in "unconscionable commercial practices." The New Jersey Supreme Court has stated that "unconscionability is an 'amorphous concept obviously designed to establish a broad business ethic.'" *Cox v. Sears Roebuck & Co.,* 647 A.2d 454, 462 (N.J. 1994) (quoting *Kugler v. Romain*, 279 A.2d 640, 651 (N.J. 1971)). Where an alleged CFA violation consists of an

"unconscionable commercial practice," the standard for unconscionability is a "lack of good faith, honesty in fact and observance of fair dealing." *Id.* However, "'a breach of warranty, or any breach of contract, is not per se unfair or unconscionable' . . . . [Instead,] substantial aggravating circumstances must be present in addition to the breach." *Id.* (quoting *D'Ercole Sales, Inc. v. Fruehauf Corp.*, 501 A.2d 990, 998 (N.J. Super. Ct. App. Div. 1985)). Unlike fraudulent misrepresentation claims, unconscionable commercial practices need not induce the purchase, given that the Act also targets "the subsequent performance." *New Mea Constr. Corp. v. Harper*, 497 A.2d 534, 543 (N.J. Super. Ct. App. Div. 1985).

Wachovia argues that Plaintiff is attempting to recast as a CFA claim what is merely a "breach of contract" claim. (Wachovia's Br. in Supp. 15.) We disagree. Here, Plaintiff has alleged that Wachovia engaged in unconscionable commercial practices by allowing DRS to charge her fees to regain personal property that was in the vehicle, by requiring her to travel to Waverly, NY to redeem her vehicle, and by authorizing State Line to hold Plaintiff's vehicle until she paid the transportation and storage fees charged by State Line. (*See* Am. Compl. ¶¶ 110, 185, 199.) Plaintiff's claims relate to Wachovia's practices beyond rights and obligations stated in the RISC. Thus, Plaintiff has adequately stated a CFA claim based on the alleged "unconscionable business practices."

We also note Wachovia's argument that a CFA claim would unfairly expose it to treble damages where the Uniform Commercial Code already provides statutory damages. (Wachovia's Br. in Supp. 18) [39]. Wachovia cites in support of this argument the Official Comment to UCC § 9-625, which states: "A secured party is not liable for statutory damages under this subsection more than once with respect to any one secured obligation." (*Id.* at 20 (citing U.C.C. § 9-625 cmt. 4); *see also* N.J.S.A. 12A:9-625 cmt. 4. However, this Comment merely states that a party cannot be subject to double liability under the UCC; it does not indicate that a party cannot be liable for statutory damages under the UCC in addition to treble damages under the CFA.

Furthermore, any question regarding the appropriate remedy is best deferred until Wachovia's liability is determined, and therefore would not be an appropriate ground on which to grant judgment on the pleadings.

### D. Wachovia's Motion for Judgment on the Pleadings as to Plaintiff's Claim Under N.J.S.A. 12A:9-513

Plaintiff alleges that Wachovia violated the New Jersey Uniform Commercial Code ("NJUCC"), by failing to file a termination statement as required by N.J.S.A. 12A:9-513. (Am. Compl. ¶ 180.) Wachovia argues that the NJUCC does not apply because the Motor Vehicle Certificate of Ownership Law ("MVCOL"), N.J.S.A. 39:10-1, *et seq.*, provides a comprehensive scheme governing the perfection and termination of security interests in motor vehicles. (Wachovia's Br. in Supp. of Mot. for J. on Pleadings and Dismissal of Pl.'s Cl. Under N.J.S.A. 12A:9-513 7) [44]. We agree that the MVCOL applies in lieu of the NJUCC termination-statement requirement, and therefore we must grant judgment in Wachovia's favor on this claim.

It is undisputed that the MVCOL, N.J.S.A. 39:10-8, 9, governs the perfection of a security interest in a motor vehicle. *See* (Wachovia's Br. in Supp. 7–8); (Pl.'s Br. in Opp'n 7) [49]; *see also In re Mfr.'s Credit Corp.*, 441 F.2d 1313, 1317 (3d Cir. 1971) ("[W]here [the MVCOL] is applicable to the filing of a security interest in a motor vehicle, its provisions, and not those of the [NJUCC] govern the proper method of filing."). Plaintiff, however, asserts that after removal of the security interest a creditor must comply with termination requirements stated in both the MVCOL, N.J.S.A. 39:10-10, and the NJUCC, N.J.S.A. 12A:9-513. (Pl.'s Br. in Opp'n 8–9.) The MVCOL requires a secured party to "deliver to the buyer the certificate of ownership thereto . . . with proper evidence of satisfaction of the contract or termination of the security interest." N.J.S.A. 39:10-10. The secured party must then, within 15 days, "file with the director a notice . . . containing evidence of such performance or termination." *Id.* By contrast, the NJUCC requires "a secured party [to] cause the secured party of record for a financing statement to file [a]

-12-

termination statement." N.J.S.A 12A:9-513(b).  This termination statement must be filed "within one month after there is no obligation secured by the collateral covered by the financing statement and no commitment to make an advance, incur an obligation, or otherwise give value." N.J.S.A. 12A:9-513(b)(1).

While we recognize that it would be feasible for a secured party to deliver the certificate of ownership and to file a termination statement as well, we cannot conclude that the latter is categorically required.  The MVCOL states that "the rights and remedies of debtors and secured parties in respect to such security interest shall, except as otherwise expressly provided in this chapter, be subject to and governed by [the NJUCC]." N.J.S.A. 39:10-11(J).  As noted above, the MVCOL expressly provides rights and remedies with respect to termination, *see* N.J.S.A. 39:10-10, so these rights and remedies would not be governed by the NJUCC.  Furthermore, the NJUCC states in Comment 2 to the section entitled "Termination statement": "In the context of a certificate of title . . . the secured party could comply with this section by causing the removal itself or providing the debtor with documentation sufficient to enable the debtor to effect the removal." N.J.S.A. 12A:9-513 cmt. 2.  By its own terms, then, the NJUCC does not categorically require a termination statement to be filed.  Moreover, it can be no coincidence that the MVCOL's requirement in N.J.S.A. 39:10-10 that the secured party must deliver to the buyer the certificate of ownership with evidence of the security interest's termination is precisely the type of action that would enable a debtor to effect removal.

Thus, because filing a termination statement is not a categorical requirement in the context of motor vehicles, Plaintiff's claim that Wachovia violated the NJUCC by failing to file a termination statement must fail.  Nonetheless, we do not dismiss Plaintiff's NJUCC claim in its entirety.  Plaintiff has alleged violations of other sections of the NJUCC, including N.J.S.A. 2A:9-623, N.J.S.A. 12A:9-614, and N.J.S.A. 12A:9-102(a)(43), and Wachovia has not moved or argued for judgment on the pleadings as to these claims.  Accordingly, Plaintiff may proceed with Count I

of her Amended Complaint.

## IV. CONCLUSION

For the reasons stated above, and for good cause shown,

IT IS on this 15th day of April, 2011,

ORDERED that Defendant State Line Auto Auction, Inc.'s Motion to Dismiss [docket # 34] is DENIED; and it is

ORDERED that Defendant Wachovia Dealer Services, Inc.'s Motion for Judgment on the Pleadings as to Plaintiff's Consumer Fraud Act claim [docket # 38] is DENIED; and it is

ORDERED that Defendant Wachovia Dealer Services, Inc.'s Motion for Judgment on the Pleadings as to Plaintiff's Claim Under N.J.S.A. 12A:9-513 [docket # 44] is GRANTED; and it is

ORDERED that all claims in Count I other than the N.J.S.A. 12A:9-513 claim may proceed as alleged.

        */s/ Anne E. Thompson*
        ANNE E. THOMPSON, U.S.D.J.